# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD DEAN JOHNSON, et al., | Case No. 1:16-cv-01636-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION TO DISMISS |
| v. | |
| CITY OF ATWATER, et al., | (ECF Nos. 19, 22, 23) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is Defendants City of Atwater, Frank Pietro, Tyna Lamison, Samuel Joseph, John Smothers, David Walker, Don Wisdom, Robert Vargas, Dayton Snyder, Ken Lee, Fabian Velasquez, and Adolfo Morales' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter was referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72.

## I.

## BACKGROUND

Since 2004, Plaintiffs Richard Johnson and Lori Johnson ("Plaintiffs") have resided at 1675 Drakeley Avenue in Atwater, California. (First Am. Compl. ¶ 2.) Plaintiffs have been engaged in a long standing dispute over water service with the City of Atwater. (First Am. Compl. ¶ 10.) Plaintiff Richard Johnson went to City Hall in October 2015 to discuss their water bill which was allegedly several thousand dollars. (First Am. Compl. ¶ 11.) Defendant Lamison

came to the front window and began yelling at Plaintiff Richard Johnson accusing him of being off his medication. (First Am. Compl. ¶ 11.) Defendant Lamison had Plaintiff Richard Johnson arrested for disturbing the peace. (First Am. Compl. ¶ 11.) Plaintiff Richard Johnson was handcuffed by unknown police officers and paraded through City Hall. (First Am. Compl. ¶ 11.)

Plaintiff Richard Johnson was placed in a holding cell for several hours. (First Am. Compl. ¶ 11.) While Plaintiff was in the holding cell, unknown City employees, at the direction of Defendant Pietro, went to Plaintiffs' residence and removed a piece of pipe that supplied water to the residence, stopping the water service, and leaving the residence without water. (First Am. Compl. ¶ 11.)

About October 6, 2015, Plaintiff's placed signs in their front yard which mentioned Defendants Pietro and Lamison by name in protest of the City's actions. (First Am. Compl. ¶ 12.) The signs were visible from the public right-of-way. (First Am. Compl. ¶ 12.) Defendant Velasquez, who is the Code Enforcement Officer for the City, ordered Plaintiffs to remove the signs. (First Am. Compl. ¶ 13.) Plaintiffs refused to remove the signs and Defendant Velasquez informed them that the signs were slanderous and could result in a civil action against Plaintiffs if they were not removed; and if not removed, Defendant Velasquez would begin the uninhabitable dwelling procedure on their residence. (First Am. Compl. ¶ 13.)

On November 25, 2015, Defendants Velasquez and Vargas arrived at Plaintiffs' residence and told Plaintiff Lori Johnson that the signs must be immediately removed and the hose that was procuring water from their neighbor must be disconnected. (First Am. Compl. ¶ 14.) Plaintiff Lori Johnson refused to remove the signs and asked for a meeting with Defendant Pietro and other City personnel to resolve the water issue. (First Am. Compl. ¶ 14.) Defendant Velasquez informed Plaintiff Lori Johnson that the signs violated the municipal code and if they were not removed he would have them seized and would issue a citation for violation of the municipal code and theft of water. (First Am. Compl. ¶ 15.) Plaintiff Lori Johnson asserted that the signs were within her First Amendment rights; and Defendant Vargas requested that Plaintiff Lori Johnson remove the names from the signs. (First Am. Compl. ¶ 15.) Plaintiff Lori Johnson removed the names from the signs. (First Am. Compl. ¶ 15.)

On November 30, 2015, Defendants Vargas, Velasquez, Snyder, Smothers, Walker, Wisdom, Lee, Morales, and other City personnel came to Plaintiffs' residence to seize the signs and issue a citation for violation of the municipal code.  (First Am. Compl. ¶ 16.)  Plaintiff Lori Johnson asked for the names and badge numbers of the individuals but they refused to provide the information requested.  (First Am. Compl. ¶ 16.)  Plaintiff Lori Johnson called the paramedics because of an anxiety attack that was brought on by the removal of the signs.  (First Am. Compl. ¶ 17.)  Plaintiff Richard Johnson tried to prevent the signs from being removed and was arrested for assault and battery.[1]  (First Am. Compl. ¶ 17.)  Plaintiff Richard Johnson tried to pull the signs up himself and Defendant Vargas grabbed his right wrist and twisted his arm behind his back.  (First Am. Compl. ¶ 17.)  Defendant Snyder came to assist Defendant Vargas and they knocked Plaintiff Richard Johnson to the ground and placed him in handcuffs.  (First Am. Compl. ¶ 17.)  Plaintiff Lori Snyder was upset at watching the force used on her husband. (First Am. Compl. ¶ 17.)

When Plaintiff Lori Johnson tried to get to her husband, she was hit in the shoulder causing her to drop her cell phone which broke.  (First Am. Compl. ¶ 17.)  The paramedics were prevented from assisting Plaintiff Lori Johnson for several minutes.  (First Am. Compl. ¶ 17.) After Plaintiff Richard Johnson was handcuffed, the officers removed the protest signs, ripping and breaking them in the process.  (First Am. Compl. ¶ 18.)

Plaintiff contends that the City Municipal Code section 17.69.660 required notice of the violation to be given to the property owner and that the notice contain information about the right to appeal.  (First Am. Compl. ¶ 19.)  The City did not send Plaintiffs notice of the violation until December 18, 2015, three weeks after the signs were removed.  (First Am. Compl. ¶ 19.)  On receipt of notice of the violation, Plaintiffs filed a timely appeal.  (First Am. Compl. ¶ 20.)  The appeal was heard on January 20, 2016, by Hearing Officer L. Carmen Ramirez.  (First Am. Compl. ¶ 21.)  The hearing officer determined that the City's Municipal Code created a constitutionally impermissible content focused inquiry and the late notice of abatement must be

---

[1] Although Plaintiff Richard Johnson states that he was arrested for assault and battery, the citation to appear also charged him with a violation of Penal Code section 148(a)(1), Resisting, Delaying or Obstructing Officer.  (Notice to Appear, ECF No. 12 at 41); United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011).

cancelled.[2]  (First Am. Compl. ¶ 22.)

After the signs were seized, Plaintiff's alternate water source was interrupted, leaving Plaintiffs' residence without water and the uninhabitable dwelling process began.  (First Am. Compl. ¶ 24.)  Plaintiffs were told if they moved out of their house and rented it the water would be turned back on.  (First Am. Compl. ¶ 24.)  Plaintiffs did not have the funds to pay the water bill in full and moved out of their house for 31 days.  (First Am. Compl. ¶ 24.)  Plaintiffs moved out of the house, renting it out, and the City turned the water back on.  (First Am. Compl. ¶ 24.)  After hearing that Plaintiffs were speaking with legal counsel, Defendant Pietro met with Plaintiffs and allowed them to return to their home with the water turned on.  (First Am. Compl. ¶ 24.)

When Plaintiffs moved back in the house, they discovered that the renters had planted several marijuana plants in their backyard.  (First Am. Compl. ¶ 25.)  Plaintiff Lori Johnson discussed this with Defendant Lee who asked if she really wanted to get rid of the plants because marijuana was almost legal.  (First Am. Compl. ¶ 25.)  Defendant Lee later apologized to Plaintiff Lori Johnson for the comment.  (First Am. Compl. ¶ 25.)

At some time, Defendant Pietro gave Plaintiffs $1,750 cash with no explanation.  (First Am. Compl. ¶ 12.)  Plaintiff Lori Johnson inquired of the City where the money came from and what it was for, but did not receive a satisfactory response.  (First Am. Compl. ¶ 26.)

Plaintiffs Richard Johnson and Lori Johnson filed this action in the Superior Court for the County of Merced on September 20, 2016, alleging violations of the Fourth Amendment against Defendant Lamison and Doe defendants based on Plaintiff Richard Johnson's arrest on October 6, 2015; violations of the First, Fourth, and Fourteenth Amendments, and California Civil Code § 52.1 against all defendants except Lamison based on the November 30, 2015 incident; and false arrest and false imprisonment, intentional infliction of emotional distress, and negligence against all defendants.

/ / /

---

[2] The hearing officer found that had the City cited the code section strictly based on the size of the signs the result of her ruling would likely have been different.  (ECF No. 12 at 39.)

On October 28, 2016, this action was removed by Defendants to the Eastern District of California. Defendants City of Atwater, Pietro, Lamison, Joseph, Walker, Wisdom, Vargas, Snyder, Lee, Velasquez, and Morales filed an answer on November 20, 2016. Defendant Smothers filed an answer on January 25, 2017. On February 28, 2017, Plaintiffs filed a first amended complaint. Defendants filed a motion to dismiss on March 17, 2017. Plaintiffs filed an opposition to the motion to dismiss on April 4, 2017. On April 12, 2017, Defendants filed a reply.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216.

///

# III.

## DISCUSSION

Defendants move to dismiss pursuant to Rule 12(b)(6) on the ground that the complaint fails to allege sufficient facts to state any cognizable claims and they are entitled to qualified immunity for the third cause of action. Plaintiffs respond that the allegations contained in the complaint contain sufficient factual detail to survive a motion to dismiss.

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Further, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

The parties both argue facts outside of the first amended complaint to support their position as to whether a claim has been stated in the first amended complaint. However, in deciding a Rule 12(b)(6) motion, the Court may not look beyond the complaint without converting the motion to a motion for summary judgment. Ranch Realty, Inc. v. DC Ranch Realty, LLC, 614 F. Supp. 2d 983, 987 (D. Ariz. 2007). The Court considers whether a claim has been stated based upon the allegations set forth in the first amended complaint.[3]

Based on review of the first amended complaint, the allegations include facts that could potentially lead to claims that have not been pled in the first amended complaint. The plaintiff is

---

[3] A court generally cannot consider material outside of the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). However, the incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." Corinthian Colleges, 655 F.3d at 999.

the master of his complaint and can choose which claims he will pursue in this action and which he chooses not to pursue. Additionally, Plaintiffs in this action are represented by counsel and, therefore, the Court does not liberally construe the complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (Pro se complaints are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"). Therefore, the Court finds that the claims being pursued in this action are those specifically identified in the causes of action set out within the first amended complaint.

### A. Defendant Liability

To state a claim under section 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. To state a claim against a defendant, the plaintiff must plead that the official has violated the Constitution through his own individual actions. Iqbal, 556 U.S. at 676; OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012). In other words, to state a claim for relief under section 1983, Plaintiffs must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiffs' federal rights.

#### 1. Monell Liability

Plaintiffs allege that the City had customs, policies, usages, or practices "1) for using excessive/unreasonable force on people; 2) for unlawfully seizing people; 3) for unlawfully seizing private property; 4) for falsely imprisoning people; 5) for interfering with people's and/or otherwise violating people's constitutionally protected right to free speech; 9) [sic] for interfering with people's rights to remain in their private residences; 10) for denying people equal protection under the laws, especially based on mental health and/or freedom of speech); 11) for interferring [sic] with people's rights to mobilize support to bring about change in government policies and procedures." (First Am. Compl. at ¶ 7.) Plaintiffs also allege that the City was negligent by failing to exercise reasonable diligence in serving the notice of violation prior to seizing Plaintiffs' signs, failing to train its employees, failing to supervise Defendant Lamison, and

failing to follow its own regulations. (First Am. Compl. at ¶¶ 89-92.) The Police Department was negligent because it had a duty to interview any alleged victim prior to handcuffing and restraining Plaintiff Richard Johnson, and failing to confirm events with the alleged victim before arresting a suspect. (First Am. Compl. at ¶¶ 93-94.)

First, under Monell, 436 U.S. 658, "a municipality cannot be held liable under § 1983 *solely* because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. Id. at 694. "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' " Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & County of San Francisco, 308 F.3d 968, 984–85 (9th Cir.2002)).

In this action, other than the allegation that the municipal code was found to be an unconstitutionally content based restriction (First Am. Compl. at ¶ 22), the complaint is devoid of any allegations to support a custom, policy, or practice by the City or the Police Department. A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom. Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) holding modified by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001). Plaintiff has alleged no facts by which the Court can infer that the City had a longstanding custom or policy of using unreasonable force, unlawfully seizing people or property, falsely imprisoning people, interfering with an individual's right to remain in their home, or denying equal protection of the

laws.

While Plaintiffs argue that the municipal code establishes that the City Manager establishes policy for the City, Plaintiffs did not include such allegations in the first amended complaint.  Further, Plaintiffs' conclusory allegations that Defendant Pietro directed and ratified the numerous events that are complained of in the complaint are not entitled to the presumption of truth.  Iqbal, 556 U.S. at 681; Twombly, 550 U.S. at 555.  Plaintiffs allege that Defendant Pietro was Chief of Police and stepped down on August 8, 2016 after the alleged events took place and continues to act as City Manager.  (First Am. Compl. at ¶ 4.)  After meeting with Pietro, he let them move back into their home and turned their water back on.  (First Am. Compl. at ¶ 24.)  At some point, Pietro gave Plaintiffs $1,750 cash for which they have received no satisfactory explanation.  (First Am. Compl. at ¶ 26.)  These factual allegations are insufficient to establish that Defendant Pietro knew of, much less directed and ratified, the events alleged in the complaint.  The allegations in the complaint seek to hold Defendant Pietro liable due to his position as City Manager and Chief of Police, however, there is no supervisory liability under section 1983.  Iqbal, 556 U.S. at 677.

Moreover, while unclear, it does not appear that Plaintiffs are challenging the municipal code as being an impermissible content based restriction on speech but are seeking damages against the defendants who enforced the regulation.  If Plaintiffs seek to challenge the municipal code or are bringing a Monell claim, they need to clearly set forth the basis of the claim in a separate cause of action identifies the specific policy, custom, or procedure and the factual basis to hold the County liable.[4]

---

[4] While Plaintiffs did not include a Monell claim in their causes of action brought in the first amended complaint, Plaintiffs allege that "all DEFENDANTS, and each of them, were acting as individual persons and acting under the color of state law, pursuant to their authority as the Police Chief and/or City Manager and/or Captains and/or Lieutenants and/or Sergeants and/or sworn peace officers and/or Supervisory personnel and/or policy making and/or final policy making official(s) with CITY."  (First Am. Compl. at ¶ 6.)  To the extent that Plaintiffs are attempting to state that all defendants are final policy making officials within the City, the Court advises them that they are subject to Rule 11 of the Federal Rules of Civil Procedure which states:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

The Court finds that Plaintiffs have failed to state a cognizable <u>Monell</u> claim.

### 2. Defendant Joseph

Plaintiffs name Samuel Joseph as a defendant in the action.  (First Am. Compl. ¶ 5.)  However, the complaint is devoid of any factual allegations against Defendant Joseph.  Plaintiffs have failed to state a cognizable claim against Defendant Joseph.  The Court recommends that Defendants' motion to dismiss be granted as to Defendant Joseph.

### B. First Cause of Action

Plaintiffs' first cause of action is brought against Defendant Lamison and five Doe defendants alleging unreasonable search and seizure in violation of the Fourth Amendment.  Plaintiffs allege that there was no probable cause to arrest Plaintiff Richard Johnson.  Defendants move to dismiss the first cause of action arguing that Defendant Lamison does not have the authority to arrest Plaintiff and that Plaintiff fails to include allegations that he was not disturbing the peace because to do so would be a violation of Rule 11.  Plaintiffs do not address the first cause of action in their opposition.  Defendants respond that by failing to address the first cause of action Plaintiffs have conceded that it fails to state a claim.

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .' " <u>Terry v. Ohio</u>, 392 U.S. 1, 8 (1968).  The Constitution does not forbid all searches and seizures, but unreasonable searches and seizures.  <u>Terry</u>, 392 U.S. at 9.

It is well established that a claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, if the arrest was made without probable cause or other justification.  <u>Dubner v. City & Cty. of San Francisco</u>, 266 F.3d 959, 964 (9th Cir. 2001);

---

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
Fed. R. Civ. P. 11(b).  Should the Court determine that Rule 11 has been violated, sanctions will be imposed on the offending party.

Rosenbaum v. Washoe Cty., 663 F.3d 1071, 1076 (9th Cir. 2011). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." Dubner, 266 F.3d at 966.

California makes it unlawful to "unlawfully fight[] in a public place or challenge[] another person in a public place to fight[,]" "maliciously and willfully disturb[] another person by loud and unreasonable noise[,] or "use[] offensive words in a public place which are inherently likely to provoke an immediate violent reaction." Cal. Pen. Code § 415. Plaintiff alleges that he when he went to City Hall to discuss his utility bill, Defendant Lamison came to the front window and began accusing him of being off of his medication, and then had him arrested for disturbing the peace.

While Defendants argue that Plaintiff Richard Johnson cannot state that he was not acting belligerently on the date of his arrest because it would violate Rule 11, Plaintiff alleges that at the time that he was arrested he was acting lawfully. (First Am. Compl. at ¶ 35.) In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. Plaintiff Richard Johnson's allegation that he was acting lawfully at the time of his arrest is sufficient to state a plausible claim against the Doe defendants for illegal seizure in violation of the Fourth Amendment.

However, Defendant Lamison is the assistant to the Chief of Police. (Compl. at ¶ 11.) Plaintiff Richard Johnson asserts that he was handcuffed and taken away by unidentified City of Atwater police officers. Plaintiffs' conclusory allegation that Defendant Lamison "had him arrested" is insufficient to state a cognizable claim that Defendant Lamison violated the Fourth Amendment.

The Court finds that Plaintiff has failed to state a cognizable claim under the Fourth Amendment against Defendant Lamison. However, the complaint is sufficient to state a cognizable claim against the five Doe defendants for illegal seizure in violation of the Fourth Amendment. The Court recommends that Defendants' motion to dismiss the first cause of action for failure to state a claim be granted as to Defendant Lamison and denied as to the five Doe

1 | defendants.

2 |     **C.**     **Second Cause of Action**

3 |     Plaintiff Richard Johnson brings the second cause of action alleging the use of excessive

4 | force on November 30, 2015. Defendants contend that the second cause of action fails as to all

5 | defendants other than Vargas and Snyder because no other officer used force on Plaintiff Richard

6 | Johnson. Further, Defendants contend that as alleged in the complaint the use of force was

7 | reasonable given that Plaintiff Richard Johnson was resisting arrest and was arrested for assault

8 | and battery which he declined to state in the complaint. Plaintiffs respond that the presence of

9 | several officers "swarming" the Plaintiffs' residence over the sign ordinance violation and

10 | alleged theft of water is excessive use of force in the circumstances.

11 |     Excessive force claims which arise in the context of an arrest or investigatory stop of a

12 | free citizen invoke the protections of the Fourth Amendment and are governed by its

13 | "reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. at 394. "[W]hether the force used to

14 | effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful

15 | balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

16 | interests against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396

17 | (internal quotations and citations omitted). "Not every push or shove, even if it may later seem

18 | unnecessary in the pace of a judge's chambers, violates the Fourth Amendment." <u>Id.</u> at 396

19 | (internal quotations and citations omitted). "[T]he question is whether the officer's actions are

20 | 'objectively reasonable' in light of the facts and circumstances confronting them, without regard

21 | to their underlying intent or motivation." <u>Id.</u> at 397.

22 |     The reasonableness inquiry in excessive force cases is whether the officer's actions were

23 | " 'objectively reasonable' in light of the facts and circumstances confronting" him. <u>Smith v.</u>

24 | <u>City of Hemet</u>, 394 F.3d 689, 701 (9th Cir. 2005). In determining whether the force used to

25 | effect a particular seizure is reasonable, the court looks to "(1) the severity of the crime at issue;

26 | (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3)

27 | whether the suspect actively resists detention or attempts to escape." <u>Liston v. Cty. of Riverside</u>,

28 | 120 F.3d 965, 976 (9th Cir. 1997), as amended (Oct. 9, 1997) (citations omitted). "The

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010) (quoting Graham, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

In this instance, Plaintiffs argue the presence of multiple officers to intimidate them was excessive under the circumstances. While Plaintiffs' argue that the City had months and as long as year to obtain a warrant, the issue here is not an unreasonable seizure of the property, but whether the force used against Plaintiffs was excessive. According to Plaintiffs' complaint, Defendant Velasquez, the code enforcement officer, had been out around October 6, 2015, and November 25, 2015, and informed Plaintiffs that the signs violated the municipal code and had to be removed. (ECF Nos. 13, 14.) On each occasion, Plaintiffs told Defendant Velasquez that they would not take down the signs. (ECF Nos. 13, 14, 15.) Further, based on the allegations in the complaint, Plaintiffs had a history of refusing to comply with the City requests as evidenced by the allegations relating to the sign and water issues. (ECF No. 13, 14.) While the crime at issue here was not necessarily severe, the history of the parties indicated that the threat that the situation could become violent was apparent. In the totality of the circumstances alleged in the complaint, the Court finds that it was not objectively unreasonable for the City to ensure that there were sufficient officers available when Defendants Vargas and Velasquez returned to enforce the municipal ordinance and issue citations due to Plaintiffs' refusal to comply with the municipal code and water theft. Plaintiffs fail to state an excessive force claim against the named defendants based upon their presence at the residence on November 30, 2015.

Plaintiff Richard Johnson alleges that when he tried to prevent the signs from being removed, Defendant Vargas grabbed his right wrist and twisted his arm behind his back. (Compl. at ¶ 17.) Defendant Snyder came to assist Defendant Vargas, and they knocked Plaintiff Richard Johnson to the ground and placed him in handcuffs. (Compl. at ¶ 17.) Plaintiff Richard Johnson tried to pull the signs up himself and ended up being arrested for assault and battery.

(Compl. at ¶ 17.) In the circumstances presented here, Plaintiff Richard Johnson attempting to prevent the officers from performing their duties, the Court cannot infer that the force used was objectively unreasonable.

Plaintiffs have failed to state a claim for excessive force in violation of the Fourth Amendment based on the November 30, 2015 incident. The Court recommends that Defendants' motion to dismiss the second cause of action for failure to state a claim be granted.

**D.      Third Cause of Action**

Plaintiffs' third cause of action alleges an unreasonable seizure of private property based on the removal of the protest signs from in front of their house. Plaintiffs allege that the signs were removed in violation of the City Municipal Code section 17.69.660B which requires a notice of violation and an opportunity to appeal prior to taking any abatement action. Defendants argue that even if the signs were removed without complying with section 17.69.660B, a violation of the municipal code does not amount to a Fourth Amendment violation.

1.      Search and Seizure

A seizure of property occurs for the purposes of the Fourth Amendment when "there is some meaningful interference with an individual's possessory interests in that property." Lavan v. City of Los Angeles, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). "The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy." Lavan, 693 F.3d at 1028–29. "It is clear that the warrant requirement of the fourth amendment applies to entries onto private land to search for and abate suspected nuisances." Conner v. City of Santa Ana, 897 F.2d 1487, 1490 (9th Cir. 1990). In this instance, Plaintiffs have alleged a seizure of their property when the signs were removed from their front yard. The question then is whether the seizure itself violated the Fourth Amendment, which again requires the Court to examine the reasonableness of the seizure. Soldal v. Cook Cty., Ill., 506 U.S. 56, 71 (1992).

While Defendants are correct that failure to provide notice pursuant to the municipal code does not amount to a Fourth Amendment violation, neither does the decision to seize the

property pursuant to the municipal code determine the reasonableness of the seizure.  Lavan, 693 F.3d at 1030.  Moreover, the destruction of property beyond that necessary to seize the property may violate the Fourth Amendment.  San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 977 (9th Cir. 2005); Liston, 120 F.3d at 979.

The first amended complaint alleges that on November 30, 2015, Defendants Vargas, Velasquez, Snyder, Smothers, Walker, Wisdom, Lee, Morales, and other unknown personal came to their residence to seize the signs and issue a citation for water theft and municipal code violations.  (First Am. Compl. at ¶ 16.)  While Plaintiffs allege that the signs were seized without a warrant, the complaint fails to identify the individual or individuals who seized the signs.  The mere presence of an individual at the scene of the incident is insufficient to establish liability for the acts alleged.

Plaintiffs also allege that the signs were ripped and broken in the process of being removed.  While the unnecessary destruction of the signs would be sufficient to state a cognizable claim for violation of the Fourth Amendment, Plaintiffs' allegation that the defendants removed the protest signs, ripping and breaking them in the process fails to state a cognizable claim.  Iqbal, 556 U.S. at 677.  If Plaintiffs file an amended complaint they must identify the defendants who engaged in the conduct alleged.[5]  Iqbal, 556 U.S. at 676.  Plaintiff fails to state a cognizable claim for a violation of the Fourth Amendment due to the seizure and removal of the protest signs.  The Court recommends that the third cause of action for violation of the Fourth Amendment be dismissed for failure to state a cognizable claim.

2.  Due Process

While the cause of action is somewhat vague, Plaintiffs argue the first amended complaint states a due process claim in this action.  Defendants did not address a due process claim; however, Plaintiffs argue that their due process rights were violated by the failure to

---

[5] In their reply, Defendants argue that the removal of the signs by Defendants Velasquez, Vargas, and Snyder would not be unlawful conduct, however, the first amended complaint does not identify these defendants as the individuals who removed the signs.  The complaint alleges that when Plaintiff Richard Johnson began to pull up the signs himself he was arrested by Defendants Vargas and Snyder.  (First Am. Compl. at ¶ 17.)  After Plaintiff Richard Johnson was placed in handcuffs, "DEFENDANTS continued to remove the protest signs, ripping and breaking them in the process."  (First Am. Compl. at ¶ 17.)  The complaint does not include any allegations to identify who seized the signs.

provide notice prior to removal of the signs. The Court notes that Plaintiffs in this action are represented by counsel. If Plaintiffs choose to file an amended complaint, they are advised that the amended complaint needs to clearly set out all causes of action which Plaintiffs seek to pursue in this matter.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The requirements of due process are flexible and the procedural protections required are as the particular situation demands. Wilkinson, 545 U.S. at 224. "To satisfy procedural due process, a deprivation of life, liberty, or property must [generally] be preceded by notice and opportunity for hearing appropriate to the nature of the case." Lone Star Sec. & Video, Inc. v. City of Los Angeles, 584 F.3d 1232, 1236, 1238 (9th Cir. 2009) (internal punctuation and citations omitted).

Generally, the Due Process Clause requires some type of hearing before the State deprives an individual of his liberty or property. Zinermon v. Burch, 494 U.S. 113, 127 (1990). There are exceptions to this rule. "The government need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose." Lone Star Sec. & Video, Inc., 584 F.3d at 1238. In some circumstances "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Zinermon, 494 U.S. at 128.

Plaintiffs allege pursuant to City Municipal Code section 17.69.660 they were required to receive notice of the violation and the right to appeal. (First Am. Compl. ¶ 19.) Plaintiffs state that they did not receive notice of the violation until December 18, 2015, three weeks after the signs were removed. (First Am. Compl. ¶ 19.) At the pleading stage, Plaintiffs have stated a claim against Defendant Velasquez, as the code enforcement officer, for failing to provide notice prior to the removal of the signs. However, Plaintiffs complaint fails to state a claim against any other named defendant. The Court recommends that Defendants' motion to dismiss the third cause of action for violations of due process be denied as to Defendant Velasquez and granted as to all other named defendants.

### E. Fourth Cause of Action

Plaintiffs' fourth cause of action alleges violations of their rights to free speech and to petition the government in violation of the First Amendment. Defendants argue that it is unclear who this cause of action is pled against and the complaint is devoid of any facts to indicate that Plaintiffs' free speech rights were violated. Further, Defendants contend that the facts as pled show that they were enforcing the municipal code and there are no facts to establish that the municipal code was illegal or that they were aware that the municipal code was illegal. Plaintiffs counter that by swarming their property and removing the signs their voices were silenced and their attempt to mobilize popular support to change existing laws and conditions at City Hall and the First Amendment was violated.

Signs are a form of expression protected by the Free Speech Clause, City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994), and the First Amendment also protects the right to protest, United States v. Baugh, 187 F.3d 1037, 1042 (9th Cir. 1999). "[D]ebate on public issues should be uninhibited, robust, and wide-open, and . . . it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Menotti v. City of Seattle, 409 F.3d 1113, 1140 (9th Cir. 2005) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). It is well accepted that the government can regulate the physical characteristics of signs within reasonable bounds and without a censorial purpose. City of Ladue, 512 U.S. at 48.

In this cause of action, Plaintiff has not challenged the regulation itself, but seeks to hold the officers who were enforcing the regulation personally liable for infringing upon his First Amendment rights. "State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). Plaintiffs may bring a suit against the responsible state agents under section 1983. Gibson, 781 F.2d at 1338.)

///

In order to state a claim against the individual defendants in this action, Plaintiffs must show that they were engaged in protected conduct, the defendant's action chilled or deterred their political speech, and such deterrence was a substantial or motivating factor in the defendant's conduct. Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013); Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994). A plaintiff may not state a claim based on merely speculative basis due to generalized and legitimate law enforcement efforts. Mendocino Envtl. Ctr. v. Mendocino Cty., 14 F.3d 457, 464 (9th Cir. 1994). Intent to retaliate is an element of the claim. Mendocino Envtl. Center, 14 F.3d at 464.

Plaintiffs' placement of protest signs in their front yard is protected speech under the First Amendment. Collins v. Jordan, 110 F.3d 1363, 1371 (9th Cir. 1996); City of Ladue, 512 U.S. at 56. Plaintiffs' allegation that Defendant Velasquez told Plaintiffs that the signs were slanderous and if they were not removed he would start an uninhabitable dwelling procedure on their residence is sufficient to state a claim that Defendant Velasquez acted to chill Plaintiffs' speech. Plaintiffs have stated a claim for retaliation in violation of the First Amendment against Defendant Velasquez.

However, Plaintiffs have not alleged facts to show that deterrence or chilling of First Amendment activity was a substantial or motivating factor in any other defendants' conduct. Rather, based on the allegations in the complaint, the officers were acting to enforce a municipal ordinance that was violated by the signs being in Plaintiffs' yard. In the fourth cause of action Plaintiffs allege that there rights under the First Amendment were violated "when [Defendants] swarmed the JOHNSON residence and proceeded to remove, damage, destroy and seize PLAINTIFFS' protest signs, they abridged PLAINTIFFS' rights to free speech and silenced PLAINTIFFS' voices and removed PLAINTIFFS' attempts to mobilize popular support to change existing laws and/or conditions found at CITY Hall, all in violation of the First Amendment to the United States Constitution." (First Am. Compl. at ¶ 56.) These allegations are insufficient to state a plausible claim that the defendants acted with the intent to chill Plaintiffs' speech, rather than to enforce the municipal code. Also, while Plaintiffs make reference to the municipal code, they fail to identify the code section or provide any allegations

regarding what was prohibited by the municipal code.

The Court finds that Plaintiff has failed to state a claim against any other named defendant. The Court recommends that the motion to dismiss the fourth cause of action be denied as to Defendant Velasquez and granted as to all remaining defendants.

### F.      Fifth Cause of Action

Plaintiffs' fifth cause of action alleges a violation of California Civil Code section 52.1 known as the Bane Act. The Bane Act provides "a state law remedy for constitutional or statutory violations accomplished through intimidation, coercion, or threats." Davis v. City of San Jose, 69 F.Supp.3d 1001, 1007 (N.D. Cal. 2014). The Bane Act requires an "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." Austin B. v. Escondido Union Sch. Dist., 149 Cal.App.4th 860, 882 (2007) (quoting Jones v. Kmart Corp., 17 Cal.4th 329, 338 (1998)). To state a claim under the Bane Act, the plaintiff need not plead that "the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." Austin B, 149 Cal.App.4th at 882.

Plaintiffs' allegations regarding Defendant Velasquez threat to have their home declared an uninhabitable dwelling if they did not remove the protest signs is sufficient to state a cognizable claim against Defendant Velasquez under the Bane Act. However, courts have held that the plaintiff "in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." Lyall v. City of Los Angeles, 807 F.3d 1178, 1196 (9th Cir. 2015). While Plaintiffs allege that the number of defendants present was to coerce them to remove the signs, Plaintiffs' allegations are insufficient for the Court to infer that any other named defendant attempted to interfere with the exercise of Plaintiffs' constitutional rights through intimidation, coercion, or threats. As the first amended complaint demonstrates, there was legitimate reason to anticipate that serving Plaintiffs with citations and removal of the signs could result in violence. Plaintiffs have not alleged any facts by which the Court can reasonably infer that any defendant, other than Defendant Velasquez as addressed above, interfered with Plaintiffs' constitutional rights by the requisite threats,

intimidation, or coercion.

The Court recommends that the motion to dismiss the fifth cause of action be denied as to Defendant Velasquez and granted as to all remaining defendants.

### G. Sixth Cause of Action

Plaintiffs' sixth cause of action is brought by Plaintiff Richard Johnson against all defendants alleging false arrest and false imprisonment. Defendants argue that the claims must be dismissed because there are insufficient facts alleged to believe that Plaintiff Richard Johnson was not obstructing, interfering or resisting because he was. Defendants also contend that Plaintiff Richard Johnson cannot plead that he was not interfering with the code enforcement officer's duties on November 30, 2015, and then became violent with Defendants Vargas and Snyder. Plaintiff responds that the defendants had no right to be on their property and the fact that they did not like the communication did not give them a lawful reason to arrest Plaintiff Richard Johnson.

The problem with the arguments of the parties is that Plaintiff's sixth cause of action clearly only challenges his arrest at City Hall in October 2015, not his arrest on November 30, 2015. The complaint alleges that "RICHARD was arrested at CITY Hall as a result of LAMISON'S request, and taken into custody by unknown CITY personnel, acting under color of law, without a warrant and under false pretenses of disturbing the peace and being "off his meds." (First Am. Compl. at ¶ 69.) The complaint goes on to allege that Lamison and the unidentified defendants did not have probable cause or reasonable suspicion to believe that an emergency situation existed. (First Am. Compl. at ¶ 70.) Plaintiffs state that Defendant Lamison and the five Doe defendants constituted a false arrest/false imprisonment of Plaintiff Richard Johnson. (First Am. Compl. at ¶ 75.) All allegations included in the sixth cause of action address the actions of Defendant Lamison who was not involved in the November 30, 2015 incident and do not mention his arrest for assault and battery.

Under California law, false imprisonment is the "'unlawful violation of the personal liberty of another.'" <u>Martinez v. City of Los Angeles</u>, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting <u>Asgari v. City of Los Angeles</u>, 15 Cal.4th 744, 757 (1997)). "[T]he elements of false

imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1205 (9th Cir. 2003) (quoting Easton v. Sutter Coast Hosp., 80 Cal.App.4th 484, 496 (2000) (citation omitted); Lyons v. Fire Ins. Exchange, 161 Cal.App.4th 880, 888 (2008) (citations omitted). "False arrest is not a different tort; it is merely 'one way of committing a false imprisonment.' " Martinez, 141 F.3d at 1379 (quoting Collins v. City & County of San Francisco, 50 Cal.App.3d 671, 673 (1975)).

Plaintiff Richard Johnson argues that the fact that all charges against him were dismissed demonstrates that he was falsely arrested. However, whether there is probable cause to arrest is a much lower standard than what is required in determining whether the charge can be proved beyond a reasonable doubt. See Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (standards such as beyond a reasonable doubt have no place in the probable cause decision). Probable cause does not require proof beyond a reasonable doubt of every element of the crime. United States v. Noster, 590 F.3d 624, 629 (9th Cir. 2009). "Neither certainty, nor proof beyond a reasonable doubt, is required for probable cause to arrest." United States v. Harvey, 3 F.3d 1294, 1296 (9th Cir. 1993). Whether there was ultimately evidence to prove that the crime was committed is not the standard by which it is determined if there was probable cause to arrest. Noster, 590 F.3d at 632. The fact that the charges were ultimately dismissed is irrelevant as to whether there was probable cause to arrest. Hart v. Parks, 450 F.3d 1059, 1067 (9th Cir. 2006).

As discussed supra at III.B., Plaintiff Richard Johnson has alleged that he was acting lawfully at the time that he was arrested in October 2015. Based on the allegations in the complaint, Plaintiff Richard Johnson has stated a claim that his arrest in October 2015 was without probable cause. Therefore, the Court recommends that Defendants' motion to dismiss the sixth cause of action be denied as to the five Doe defendants and granted as to all other named defendants in this action.

## H.    Seventh Cause of Action

Plaintiffs' seventh cause of action alleges intentional infliction of emotional distress against all defendants. Defendants argue that Plaintiffs have failed to state a plausible claim that

their actions amounted to extreme and outrageous conduct and Plaintiff Richard Johnson has not alleged that he suffered any emotional distress. Further, Defendants contend that there are no allegations related to Plaintiff Lori Johnson that would amount to the intentional infliction of emotional distress. Plaintiffs respond that Defendant Lamison acted outrageously when she asked Plaintiff Richard Johnson if he was off his medication in the reception area of City Hall and that the defendants acted outrageously when the defendants "swarmed" their property causing Plaintiff Lori Johnson to have an anxiety attack and need the assistance of paramedics.

Under California law, the elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009). Liability for intentional infliction of emotional distress " 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' Hughes, 46 Cal.4th at 1051. Conduct is "outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " Simo v. Union of NeedleTrades, Industrial & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2002) (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999)).

Finally, the California Supreme Court has set a high bar for the requirement that the plaintiff show severe emotional distress. Hughes, 46 Cal.4th at 1051. The emotional distress must be "of such a substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Simo, 322 F.3d at 622. The emotional distress must be severe and not trivial or transient. Wong v. Tai Jing, 189 Cal.App.4th 1354, 1376 (2010).

Plaintiffs' claims of intentional infliction of emotional distress fail to state a claim both because the conduct alleged is not extreme and outrageous and Plaintiffs allegations do not rise to the level of severe emotional distress. Plaintiff Richard Johnson's allegation that Defendant Lamison asked him if he was off his meds, even if asked loudly, is more akin to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Hughes, 46 Cal.4th at

1051. The conduct does not demonstrate the type of extreme conduct that is beyond that usually tolerated in a civilized community. See Cochran v. Cochran, 65 Cal.App.4th 488, 499 (1998) (threatening phone message after pattern of previous threats are the boastful, peevish, spleen-venting that occur in an intimate relationship gone bad); cf. Miller v. National Broadcasting Co., 187 Cal.App.3d 1463, 1488 (1986) (NBC news crew entered apartment without consent to film paramedics unsuccessfully administering first aid and used the film in a documentary and for advertisement). Similarly, the defendants' actions in presenting at Plaintiffs' residence to issue citations and confiscate the signs are typical law enforcement activities that do not constitute extreme and outrageous behavior. Sanders v. City of Fresno, 551 F. Supp. 2d 1149, 1180 (E.D. Cal. 2008), aff'd, 340 F. App'x 377 (9th Cir. 2009) (officer's conduct that is reasonable cannot be extreme and outrageous).

Plaintiffs' generally allege that they suffered physical and mental pain and anguish. (First Am. Compl. at ¶¶ 19, 23.) Plaintiff Richard Johnson alleges that he was substantially mentally and emotionally injured and incurred medical and psychological costs. (First Am. Compl. at ¶¶ 38, 43, 53, 57, 66, 77, 86, 95.) Plaintiff Lori Johnson alleges that she was so distraught that she suffered an anxiety attack which required her to call the paramedics and was denied treatment for several minutes. (First Am. Compl. at ¶ 17.) The allegations in the first amended complaint fail to allege any facts to demonstrate that Plaintiffs suffered emotional distress "of such a substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it[,]" Simo, 322 F.3d at 622, or that any emotional distress suffered was more than trivial or transient, Wong, 189 Cal.App.4th at 1376.

Plaintiffs have failed to state a claim for intentional infliction of emotional distress. The Court recommends that Defendants' motion to dismiss the seventh cause of action be granted.

## I. Eighth Cause of Action

Plaintiffs' eighth cause of action is against all defendants for negligence in violation of California law. Defendants contend that the eighth cause of action is impermissibly vague as to who owed a duty to Plaintiffs, what the duty was, how it was breached, and how a breach caused damages to Plaintiffs. In their opposition to the seventh cause of action, Plaintiffs argue that

1 Defendant Lamison had a duty pursuant to her job description to deal tactfully and courteously

2 with the public.

3       A public employee is liable for injury "proximately caused by his negligent or wrongful

4 act or omission." Cal. Gov't Code § 844.6(d). Under California law "[t]he elements of a

5 negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the

6 breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage

7 resulting from the breach of the duty of care." Brown v. Ransweiler, 171 Cal.App.4th 516, 534

8 (2009). Plaintiffs have failed to identify any duty that was breached by the individual

9 defendants.

10       1.   City of Atwater and Atwater Police Department

11       In the eighth cause of action, Plaintiffs make numerous conclusory allegations regarding

12 the City of Atwater and the Atwater Police Departments' duty to exercise reasonable diligence,

13 to train and follow rules and regulations, and to interview victims prior to arresting suspects.

14 However, Plaintiffs' complaint is devoid of any facts to support such allegations. Plaintiffs'

15 conclusory allegations are insufficient to state a cognizable claim against the City of Atwater or

16 the Atwater Police Department for negligence.

17       2.   Defendant Lamison

18       Plaintiffs argue that Defendant Lamison had a duty to deal tactfully and courteously with

19 the public. Plaintiffs cite to no authority, nor is the Court aware of any legal authority, for the

20 proposition that a public employee owes a duty to deal tactfully and courteously with the public.

21       California law provides that "[e]veryone is responsible, not only for the result of his or

22 her willful acts, but also for an injury occasioned to another by his or her want of ordinary care

23 or skill in the management of his or her property or person, except so far as the latter has,

24 willfully or by want of ordinary care, brought the injury upon himself or herself." Cal. Civ.

25 Code § 1714(a). "Under general negligence principles . . . a person ordinarily is obligated to

26 exercise due care in his or her own actions so as to not create an unreasonable risk of injury to

27 others, and this legal duty generally is owed to the class of persons who it is reasonably

28 foreseeable may be injured as the result of the actor's conduct." Lugtu v. California Highway

1   Patrol, 26 Cal.4th 703, 716 (2001).

2       "In determining the existence of a duty of care in a given case, pertinent factors to

3   consider include the 'foreseeability of harm to the plaintiff, the degree of certainty that the

4   plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the

5   injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing

6   future harm, the extent of the burden to the defendant and consequences to the community of

7   imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and

8   prevalence of insurance for the risk involved." Davidson v. City of Westminster, 32 Cal.3d 197,

9   203 (1982).  Plaintiffs' allegation that a duty of care exists fails because it is not foreseeable that

10  a plaintiff would suffer injury from a public employee's failure to deal tactfully and courteously

11  with him.  Also, although it may be bad employee practice to not be tactful and courteous, it is

12  not morally blameful activity.  While Plaintiff Richard Johnson alleges that Defendant Lamison

13  yelled at him, he fails to show how her discourteous conduct resulted in his arrest and detention.

14  Also, the Court is unaware of any insurance that is available to cover lack of tact or courtesy.

15  The Court concludes that Defendant Lamison did not owe Plaintiff Richard Johnson a duty to act

16  tactfully and courteously.

17      Plaintiffs also argue that Defendant Lamison owed Plaintiff Richard Johnson a duty not

18  to broadcast confidential information by yelling at him and asking him if he was off his

19  medication.  Neither of the parties address whether there is a duty in the circumstances alleged in

20  the first amended complaint as to the actions of Defendant Lamison.  However, even assuming

21  there was a duty for Defendant Lamison not to divulge confidential medical information, the

22  Court finds that merely asking Plaintiff Richard Johnson if he was off his medication would not

23  be a breach of such duty.

24      Plaintiffs have failed to state a claim that Defendant Lamison owed a duty to Defendant

25  Richard Johnson which was breached.  Plaintiffs have failed to state a claim of negligence

26  against Defendant Lamison.

27  ///

28  ///

3. <u>Remaining Defendants</u>

Plaintiffs also allege that all defendants breached a duty to confirm events with an alleged victim prior to arresting Plaintiff Richard Johnson. However, assuming such a duty exists, the factual allegations in this action would not demonstrate that the duty was breached. Plaintiff Richard Johnson was arrested in October 2015 and he alleges it was at the direction of Defendant Lamison, which suggests that she spoke with the officers.

Plaintiff Richard Johnson was arrested again on November 30, 2015, when he tried to prevent officers from removing the signs in his yard. Plaintiff has failed to state a cognizable claim for negligence against any named defendant based on a failure to investigate prior to arrest.

4. <u>Plaintiffs' Failed to State a Cognizable Claim for Negligence</u>

Plaintiffs' first amended complaint fails to state a cognizable claim for negligence against any named defendant. Accordingly, the Court recommends that Defendants' motion to dismiss the eighth cause of action be granted.

**K. Conspiracy**

Plaintiffs allege that all Defendants "acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the PLAINTIFFS of their federal and state constitutional and statutory rights, as complained of in this action, and acted in joint and concerted action to so deprive the PLAINTIFFS of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of California state law." (First Am. Compl. at ¶ 8.) Defendants contend that the conclusory conspiracy allegations are insufficient to state a claim. Plaintiffs do not address the conspiracy allegations in their opposition.

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, <u>Hart</u>, 450 F.3d at 1071 (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." <u>Franklin</u>,

1  312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

2      Plaintiffs have alleged no facts to demonstrate that any defendants had an agreement or

3  meeting of the minds to violate their constitutional rights.  Rather, the first amended complaint

4  demonstrates that Defendants were attempting to enforce the municipal sign ordinance and that

5  Plaintiffs' water was turned off because the City believed that they owed thousands of dollars in

6  back water bills.

7      The first amended complaint fails to state a cognizable claim for conspiracy to violate

8  Plaintiffs' civil rights.  The Court recommends that Defendants' motion to dismiss the

9  conspiracy claim be granted.

10      **L.    Punitive Damages**

11      Plaintiffs are seeking punitive damages in this action.  Defendants contend that the first

12  amended complaint is devoid of any facts that any defendants conduct was motivated by an evil

13  motive or intent or involved reckless and callous indifference to their federally protected rights.

14  Plaintiffs disagree and contend that the complaint demonstrates that the defendants deliberately

15  and callously disregarded their rights.

16      Punitive damages may be assessed in an action brought under section § 1983 "only where

17  the [defendant's] conduct is shown to be motivated by evil motive or intent, or when it involves

18  reckless or callous indifference to the federally protected rights of others.' " <u>Dubner</u>, 266 F.3d at

19  969 (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  The decision on whether punitive damages

20  should be awarded is within the exclusive province of the jury.  <u>Smith</u>, 461 U.S. at 52; <u>Runge v.</u>

21  <u>Lee</u>, 441 F.2d 579, 584 (9th Cir. 1971).

22      In this instance, Plaintiffs have stated a claim for violation of their rights under the First

23  and Fourth Amendments and it will be for the jury to determine if the defendants' conduct was

24  motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiffs'

25  federally protected rights.

26      Accordingly, the Court recommends that Defendants' motion to dismiss the request for

27  punitive damages be denied.

28  / / /

**M.     Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires.   Fed. R. Civ. P. 15(a)(2).   Plaintiffs should be granted an opportunity to file an amended complaint.

In filing an amended complaint, Plaintiffs are advised that general allegations that "Defendants" acted are insufficient to state a claim under section 1983.   In their amended complaint, Plaintiffs must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiffs' federal rights.   Iqbal, 556 U.S. at 676.   Further, the factual allegations must be sufficient for the Court to reasonably infer that each named defendant is liable for the misconduct alleged.   Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

# IV.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.     Defendants' motion to dismiss, filed March 17, 2017, be GRANTED IN PART AND DENIED IN PART as follows:

a.     Defendants' motion to dismiss be denied as to Plaintiff Richard Johnson's claims against the five Doe defendants for illegal seizure in violation of the Fourth Amendment (First Cause of Action) and false arrest/false imprisonment (Sixth Cause of Action);

b.     Defendants' motion to dismiss be denied as to Plaintiffs' claims that Defendant Velasquez violated the Due Process Clause by failing to provide notice prior to removing their signs (Third Cause of Action), retaliated against them for their political speech in violation of the First Amendment (Fourth Cause of Action), and for violation of the Bane Act (Fifth Cause of Action);

c.     Defendants' motion to dismiss the punitive damages request be denied;

d.     Defendants' motion to dismiss be granted as to the remaining claims and defendants; and

2.      Plaintiffs be granted leave to file an amended complaint.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 18, 2017**

UNITED STATES MAGISTRATE JUDGE