# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD DEAN JOHNSON, and LORI JOHNSON** | **CASE NO. 1:16-CV-1636 AWI SAB** |
| **Plaintiffs** | **ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **v.** | |
| **CITY OF ATWATER; and FRANK PIETRO; DAVID WALKER; ROBERT VARGAS; DALTON SNYDER; and FABIAN VELASQUEZ, Each in his official and individual capacities;** | (Doc. No. 37, 44) |
| **Defendants** | |

Richard and Lori Johnson ("Plaintiffs") have brought various claims for violations of their civil rights against the City of Atwater, Chief of Police/City Manager Frank Pietro, City Code Enforcement Officer Fabian Velazquez, and Law Enforcement Officers David Walker, Robert Vargas, and Dalton Snyder (collectively, "Defendants"). Defendants have moved for partial summary judgment on the following causes of action:

(II)   Excessive force, against Officers Vargas and Snyder;
(III)   Denial of due process, against the City and Code Officer Velazquez;
(IV)   Impingement of right to free speech, against the City and Code Officer Velazquez;
(VII)   *Monell* liability for the aforesaid claims, against the City and Chief Pietro.[1]

For the reasons that follow, Defendants' motion will be granted as to causes of action (II), (III), and (VII), and denied as to cause of action (IV).

---

[1] Plaintiffs have alleged three additional claims unrelated to the subject of this motion.

# **FACTUAL BACKGROUND**[2]

   This case arises from a continuing dispute between the Johnsons and the City of Atwater over the non-payment of a water bill. SS #1, 2. In the fall of 2015, the Johnsons placed a number of signs in the front yard of their residence, in protest of the City's actions during the dispute. SS #2. Code Officer Velazquez informally contacted the Johnsons multiple times to discuss removal of the signs, as well as resuming their water service. SS #2, 3. Velazquez believed the signs violated the Atwater Municipal Code (the "Code"), but the Johnsons maintained they had a free-speech right to display the signs on their property. SS #2. During these encounters, the Johnsons became increasingly hostile toward Velazquez. SS #6.

   On November 30th, Velazquez went to the Johnsons' residence, accompanied by Officer Vargas, to effectuate removal of the signs. SS #11. Outside the residence, the Johnsons forcefully asserted the City had no right to seize the signs. SS #12-15. Fifteen minutes into the argument, Officer Snyder and City employee Manny Rodriguez arrived to help remove the signs. SS #19. As Rodriguez began to remove one from the yard, Mr. Johnson moved toward him at a fast pace and "pushed [Rodriguez] a little bit." SS #20, 22, 23. Officers Vargas and Snyder then attempted to restrain Mr. Johnson, and a scuffle ensued. SS #24-29. Mr. Johnson was eventually secured in the Officers' patrol car, and the signs were seized by the City officials. *Id*. Mr. Johnson was charged with the battery of Rodriguez and resisting arrest; these charges were ultimately dropped. SS #32.

   Shortly after November 30th, the Johnsons installed more protest signs. SS #34. In December, the City sent Plaintiffs a formal Notice to Abate. SS #40. The City's administrative hearing officer determined the City applied the Code in an unconstitutional manner; the City ceased its attempts to have the signs removed. SS #38, 39. Additionally, the Johnsons filed a claim against the City for the seizure of the signs; this claim was settled for $1200. SS #33, 34.

   The Johnsons filed this suit against the City, Chief of Police Frank Pietro, and Officers Velazquez, Vargas and Snyder. Defendants now move for partial summary judgement.[3]

---

[2] References to the "Separate Statement of Undisputed Facts" (Doc. No. 37-2) are denoted as "SS".

[3] Additional relevant facts will be supplied in the analysis, as necessary.

*Legal Standard for Summary Judgment*

Summary judgment is proper when no genuine issue as to any material fact exists, entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56. A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248-49.

The party seeking summary judgment bears the initial burden of informing the court of the legal basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *Id.* (citing *Celotex*, 477 U.S. at 332).

If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). If the moving party meets this initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Id.* at 1103. The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial. *Id.*

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable. *See Narayan v. EGL, Inc.*, 616 F.3d

895, 899 (9th Cir. 2010).  A party's "conclusory statement that there is a genuine issue of material fact, without evidentiary support, is insufficient to withstand summary judgment."  *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1167 (9th Cir. 2002); *see also Fitzgerald v. El Dorado Cnty.*, 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015) ("Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.").  The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.  *See Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249-50.

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2015).  However, if the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  *Nissan Fire*, 210 F.3d at 1103.

### *Claims under 42 U.S.C. § 1983*

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by a person acting "under color of any statute, ordinance, regulation, custom, or usage."  *Gomez v. Toledo*, 446 U.S. 635, 639 (1980); *Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007).  "Section 1983 is not itself a source of substantive rights; rather it provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–394 (1989).

To state a claim for relief under § 1983, the Plaintiffs must plead two essential elements: (1) that the Defendant acted under color of state law; and (2) that the Defendant caused them to be deprived of a right secured by the Constitution and laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988)); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).

I.      **Summary Judgment as to Claim II: Excessive Force, Officers Vargas and Snyder**

*Facts Material to this Claim*

On November 30, 2015, Code Officer Velazquez and Law Enforcement Officers Robert Vargas and Dalton Snyder went to the Johnsons' residence to remove multiple protest signs from the front yard. SS #11. Outside the residence, Plaintiffs and Velazquez argued as to whether the City could remove the signs. SS #12. The Johnsons were aggressive and verbally abusive toward Velazquez, and told Officer Vargas "if you touch these signs, there's going to be trouble." SS #15, 16, 18. Velazquez believed the signs to be illegal, and Mr. Johnson believed the City was trying to "intimidate" him by sending multiple officers to "swarm" his residence. SS #8, 12.

Fifteen minutes into the encounter, two City employees, Manny Rodriguez and Freddy Vasquez, arrived at the residence to assist in the removal of the signs. SS #19. As Rodriguez began to remove one of the signs, Mr. Johnson moved toward him at a fast pace. SS #20. Officer Vargas stepped in front of Mr. Johnson, ordering him to stop; Mr. Johnson pushed past Officer Vargas and "pushed [Rodriguez] a little bit." SS #22, 23. Officer Vargas then grabbed Mr. Johnson's right wrist to apply handcuffs, and Officer Snyder attempted to grab Mr. Johnson's left wrist, but Mr. Johnson pulled away, knocking the handcuffs from Officer Vargas' hands. SS #24, 25, 27. Officers Snyder and Vargas then seized Mr. Johnson, taking him down to the ground and applying handcuffs, while Velazquez secured Mr. Johnson's leg. SS #27, 29. Officer Snyder said "trip him up, trip him up" as they executed the takedown. R. Johnson Depo, Ex. 16 at 209. During the scuffle, Officer Snyder instructed Mr. Johnson to put his hands behind his back, stop, cooperate and relax, to which Mr. Johnson replied "I'm trying, please." SS #27. Mr. Johnson fell on his face, injured his shoulder, and maintains he "never once resisted," that he "always let [the police take him] to jail [because] if they are going to do it, they're going to do it . . . . I've never fought back a cop in my life." *Id.*; R. Johnson Depo at 209. Officers Snyder and Vargas maintain Mr. Johnson resisted their seizure efforts throughout the encounter. SS #26, 27, 28, 29.

Mr. Johnson was charged with battery (of Manny Rodriguez) and resisting arrest. *Id.* He was taken to the hospital for his injuries, which did not require a follow-up visit. SS #31. The charges were ultimately dropped. SS #29.

*Defendants' Argument*

Defendants maintain the undisputed material facts show that Officers Vargas and Snyder observed Mr. Johnson committing a battery of City Employee Rodriguez and used the appropriate amount of force necessary to arrest Mr. Johnson. Defendants argue that Plaintiffs' assertions— that Mr. Johnson was trying to protect himself—are self-serving and immaterial. Further, Defendants contend that even if the Officers did use excessive force, they are entitled to qualified immunity because no clearly established constitutional right of Mr. Johnson's was violated.

*Plaintiffs' Opposition*

In their second amended complaint, Plaintiffs have pleaded that Officers Vargas and Snyder deprived Mr. Johnson of his Fourth Amendment right to be free from excessive or unreasonable force. Plaintiffs counter Defendants' motion for summary judgment by arguing the Officers are not entitled to qualified immunity because the record demonstrates a genuine issue of material fact that a constitutional violation—the right to be free from retaliation for exercising free-speech rights—did occur and has been established since 1990. Plaintiffs do not appear to contest whether the Officers had probable cause to make an arrest, but have consistently maintained that Mr. Johnson was not resisting and was in fact trying to cooperate with the Officers as they arrested him. Thus, Plaintiffs contend summary judgment on this point should be denied.

*Analysis*

A. *Excessive Force*

The facts, as presented in the statement of undisputed facts, and taken in a light most favorable to Plaintiffs, show a genuine issue of material fact on the issue of whether the Officers' takedown of Mr. Johnson violated his Fourth Amendment right.

Claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in *Graham*, 490 U.S. 386. The reasonableness of a seizure turns on whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, which is determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396-97; *Young v. Cty. of Los Angeles*, 655

F.3d 1156, 1161 (9th Cir. 2011). This balancing requires an analysis of: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting or attempting to evade arrest by flight." *Campbell v. Santa Cruz Cty.*, 2016 WL 6822081, at *4 (N.D. Cal. Nov. 18, 2016) (quoting *Graham*, 490 U.S. at 390). However, the court should also consider "the totality of the circumstances" and "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). Because cases involving police misconduct "nearly always require a jury to sift through disputed factual contentions" and "almost always turn on credibility determinations," the Ninth Circuit has held on many occasions that "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir.2003).

In *Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017), the Ninth Circuit found sufficient evidence to support a Fourth Amendment violation in plaintiff's § 1983 case. There, the plaintiff committed a misdemeanor offense, was noncompliant in following the officer's orders, and resisted his arrest. *Id*. at 1116. Despite the strong evidence against the plaintiff, the jury could have drawn reasonable inferences from the plaintiff's testimony to support a verdict in favor of the plaintiff. *Id.*

In *Huber v. Coulter*, the Central District of California examined a summary judgment motion brought by two officers who effectuated the forceful arrest of a non-resisting plaintiff. 2015 WL 13173223 (C.D. Cal. Feb. 10, 2015) aff'd, 684 F. App'x 623 (9th Cir. 2017). Earlier in the evening, the officers responded to a domestic disturbance call coming from the plaintiff's apartment. *Id*. at *4. After a 20-minute, verbally-hostile encounter between the officers and the plaintiff and his companion, the officers concluded no one was injured and left. *Id*. An hour later, one officer returned, encountering the companion outside the apartment. *Id*. The companion placed a false 9-1-1 call in front of the officer, giving him probable cause to place her under arrest. *Id*. at *5. She fled to the apartment and slammed the door, but the officer, with backup, eventually broke through the door to effectuate the arrest. *Id*. At that point, the plaintiff maintained he offered no resistance to the officers, who cuffed him, swept his feet from under him and threw him

to the ground, injuring his head. *Id*. The officers disputed this contention, maintaining the plaintiff resisted the seizure, thereby necessitating a takedown. *Id*. The court found genuine issues of material fact as to whether the officers used excessive force. *Id*. at *13. In so holding, the court reasoned that even though "officers must make split-second decisions about the amount of force necessary, and the reasonableness of their use of force must be assessed from the perspective of a reasonable officer," the factual dispute over whether plaintiff was resisting required the jury to adjudge the parties' credibility. *Id*. (quoting *Graham*, 490 U.S. at 396-97).

Here, the facts demonstrate use of force similar to *Huber*. During Velazquez's encounters with Mr. Johnson prior to November 30th, the Plaintiffs became increasingly hostile toward Velazquez, causing Velazquez to request the assistance of Officer Vargas on November 30th. SS #6. That day, in the fifteen minutes before the arrest, Mr. and Mrs. Johnson were aggressive and verbally abusive toward Velazquez and Officer Vargas. SS #15, 16, 18. Mr. Johnson told Officer Vargas "if you touch these signs, there's going to be trouble." Id. The aggressive behavior continued after Officer Snyder arrived. Id. After City employee Rodriguez began to remove one of the signs from the yard, Mr. Johnson moved toward him at a fast pace. SS #20. Officer Vargas stepped in front of Mr. Johnson, ordering him to stop; Mr. Johnson pushed past Officer Vargas and "pushed [Rodriguez] a little bit." SS #22, 23.[4] This battery of a City employee, coupled with the immediate threat posed by Mr. Johnson—as evidenced by his erratic behavior during the encounter, weigh against finding a constitutional violation exists.

However, there are still questions of fact concerning whether Mr. Johnson was actively resisting the Officers attempts to restrain him once they moved to seize him. Officer Vargas grabbed Mr. Johnson's right wrist to apply handcuffs, and Officer Snyder attempted to grab Mr. Johnson's left wrist. SS #24, 25, 27. Mr. Johnson maintains he "never once resisted," that he "always let [the police take him] to jail [because] if they are going to do it, they're going to do it," and that he has "never fought back a cop in [his] life." SS #26, 27; R. Johnson Depo at 209.

---

[4] Such contact is enough for a reasonable officer to find probable cause for battery under Cal. Penal Code § 242. *See, e.g., Bushell-McIntyre v. City of San Jose*, 252 F. App'x 810, 811 (9th Cir. 2007) (officer had probable cause to arrest for battery because arrestee touched his badge); *see also Gunnell v. Metrocolor Labs., Inc.*, 92 Cal. App. 4th 710, 725 (2001) ("Although the force used need not be violent or severe and need not cause pain or bodily harm, some force or violence must be used for a battery to occur.").

Officer Snyder instructed Mr. Johnson to put his hands behind his back, stop, cooperate and relax, and Mr. Johnson replied "I'm trying, please." SS #26, 27; Transcription of Audio Recording, Ex 8, p. 25: 12. The Officers maintain Mr. Johnson resisted, necessitating a "takedown." Id.

Reading all facts in favor of the Plaintiffs', the Court assumes that a constitutional violation exists. *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 917 (N.D. Cal. 2014) (excessive force cases "almost always turn on credibility determinations . . . ."); *compare Abston v. City of Merced*, 506 F. App'x 650, 652 (9th Cir. 2013) (facts not clear on use of force concerning whether arrestee continued to resist during and, if so, whether his resistance was anything more than minimal, and so summary judgment was inappropriate); *with Shorter v. Baca*, 101 F. Supp. 3d 876, 903 (C.D. Cal. 2015) (the plaintiff presented *no* evidence that the force employed was unreasonable, therefore the defendants were entitled to summary judgment on the excessive force claim).

## B. Qualified Immunity for Excessive Force

"[I]f a [constitutional] violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established" at the time of the arrest. *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "To satisfy this step in the qualified immunity analysis, [the parties] generally must 'identify a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the Fourth Amendment.'" *Shafer*, 868 F.3d at 1117 (quoting *White*, 137 S. Ct. at 552), *see also Id.* at 1118, fn. 3 (recognizing an exception to the 'case-on-point' rule in situations where the constitutional misconduct is "sufficiently obvious," such that the question is beyond debate). The salient question is whether, at the time of the encounter, "the state of the law ... gave [the officers] fair warning that their alleged treatment of [the arrestee] was unconstitutional." *Blankenhorn*, 485 F.3d at 481. "The plaintiff bears the burden of proof that the right allegedly violated was clearly established[.]" *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014).

Under the factual scenario set forth by Plaintiffs—accepting as true Mr. Johnson's assertion he was not resisting—it would not have been clear to a reasonable officer that the application of handcuffs and takedown of an initially-hostile-but-subsequently-unresisting arrestee would violate the Fourth Amendment—as defined by existing 9th Circuit precedent. The Court's own review of controlling case law reveals no such case prior to November 30th, 2015 "where an officer acting under similar circumstances as [the defendant officer] was held to have violated the Fourth Amendment." *Shafer*, 868 F.3d at 1117; *compare Huber*, 2015 WL 13173223, at *14 (C.D. Cal. Feb. 10, 2015), aff'd, 684 F. App'x 623 (9th Cir. 2017) ("Drawing all inferences in plaintiff's favor, defendants used unnecessary but relatively minor force against an arrestee who . . . was compliant and nonresisting [sic] at the time of arrest, [and so] the violation was not so obvious that the contours of the clearly established law could be defined."); *Emmons v. City of Escondido*, 168 F. Supp. 3d 1265, 1276 (S.D. Cal. 2016) (qualified immunity for officer who "tackled to the ground" non-resisting plaintiff-arrestee); *Matthews v. Black*, 2015 WL 1029777, at *6 (N.D. Cal. Mar. 9, 2015) (qualified immunity for officer for takedown of plaintiff after plaintiff head-butted another person); *with Blankenhorn*, 485 F.3d at 478–79 (no qualified immunity for officers who "gang-tackled" trespasser where the suspect neither posed an immediate threat nor attempted to flee); *see also Saetrum v. Vogt*, 673 F. App'x 688, 691 (9th Cir. 2016) ("Although we have recognized constitutional violations in at least two cases where officers tackled suspects, both cases involved greater force and weaker justification than are present here.").[5]

## Conclusion

Genuine issues of material fact exist as to whether Officers Vargas and Snyder used excessive force in their arrest of Mr. Johnson. However, Plaintiffs have failed to demonstrate that the particular kind of force was barred by clearly established law at the time of the encounter. Therefore, under *Shafer*, qualified immunity is appropriate for Officers Vargas and Snyder for Plaintiffs' second cause of action, and so summary judgment is appropriate.

---

[5] Plaintiffs dispute Defendants' qualified immunity claim by arguing that "[t]he law is clear that the First Amendment right to free speech, including placing signs in yards or windows, is a right to be protected." *See* Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 39-1), pp. 4-6. However, Plaintiffs forget that the substance of this claim is one for unreasonable use of force by Officers Vargas and Snyder, and not a First Amendment claim against these Officers. See SAC, ¶¶ 45-52.

## II.     Summary Judgment as to Claim III: Due Process, Velazquez and the City

### *Facts Material to this Claim*

In the fall of 2015, the Johnsons placed a number of wooden signs in the front yard of their residence, in protest of the City's actions over the water dispute. SS #2. On both November 24th and 25th, Code Officer Velazquez contacted the Johnsons to discuss removal of the signs, as he believed the signs violated the Atwater Municipal Code. SS #2. The Johnsons asserted a free-speech right to display the signs on their property, and refused to remove them from their yard. SS #3. Velazquez's informal notifications to the Johnsons did not conform to the requirements of the Atwater Municipal Code (the "Code"), § 17.69.660, detailing the procedures City officials were to follow to effectuate removal of illegal signs. SS #2.

On November 30th, Velazquez seized the signs, over the Johnsons' protests. SS #11, 34. Sometime shortly afterwards, the Johnsons reinstalled more protest signs. SS #34.

On December 18th, the City served the Johnsons with a formal Notice to Abate the signs. SS #40. An administrative hearing was held on January 14, 2016, and less than a week later the hearing officer ordered the City to cancel the Notice of Abatement, as the sections of the Code violated Plaintiffs' constitutional rights. SS #40, *see also* SAC ¶ 26. Aside from the November 30th event, the City made no efforts to remove the signs. SS #38, 39. The Johnsons filed a claim for the signs with the City, which was settled in the first part of 2016 for $1200. SS #33.

### *Defendants' Argument*

Defendants maintain Plaintiffs' third cause of action is barred by law because Plaintiffs received adequate post-deprivation remedies from the City. Thus, Defendants contend both Code Officer Velazquez and the City are entitled to judgment as a matter of law.

### *Plaintiffs' Opposition*

Plaintiffs' third cause of action, denominated "42 U.S.C. § 1983 - Violation of Due Process Under Fourteenth Amendment Unreasonable/Unlawful Seizure of Private Property under Fourth Amendment," alleges that Plaintiffs were deprived of their property without notice and an opportunity to be heard. Plaintiffs argue that the law only bars due process causes of action where a pre-deprivation hearing is impractical or where there is a necessity of quick action.

*Analysis*

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Due process protections extend only to deprivations of protected interests, such as an individual's property. *See Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). Once a protected interest is found, the court generally employs a balancing test to determine whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation. *Mathews v. Eldridge,* 424 U.S. 319 (1976). The U.S. Supreme Court has held that "[i]n situations where the State feasibly can provide a pre-deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking." *Zinermon*, 494 U.S. at 132. However, in situations where "the state administrative machinery did not and could not have learned of the deprivation until after it had occurred," and the plaintiff received an adequate post-deprivation hearing, the Supreme Court has barred due process suits. *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

In *Parratt*, prison officials allegedly lost an inmate's mail-order materials because the officials did not follow proscribed procedures. 451 U.S. 527 (1981). The inmate brought a § 1983 action for the negligent deprivation of his property without a hearing. *Id*. at 529. The Court held that this kind of event does not give rise to a § 1983 claim, reasoning that "[a]lthough he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Id*. at 543. The State offered the inmate a tort remedy—the remedy of which "could have fully compensated the respondent for the property loss he suffered," and the inmate did not allege the post-deprivation procedures were inadequate. *Id*. Thus, the Court held the requirements of due process satisfied. *Id*. at 544.

Three years later, the Court extended this rationale beyond mere negligent acts to encompass "unauthorized intentional deprivation[s] of property by state employee[s]." *Hudson*,

468 U.S. at 533.  Therein, a prisoner was subjected to a search of his locker by two prison officers, who destroyed some of his personal property.  *Id*. at 519.  A state remedy existed for the loss of this property, but the prisoner instead brought a § 1983 due-process claim.  *Id*. at 520.  In so extending *Parratt* to this intentional, unauthorized conduct, the Court reasoned:

> The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur.  For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

*Id*.; *see also King v. Massarweh*, 782 F.2d 825, 827 (9th Cir. 1986) (§1983 due process claim cannot lie "[w]hen the tortious loss of property is the result of a random, unauthorized act by a state employee, and not the result of some established state procedure, the state cannot provide a meaningful hearing before the deprivation takes place.").

However, in 1990 the Court reminded the state that in situations where it can provide a pre-deprivation hearing before seizing property, "it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking."  *Zinermon*, 494 U.S. at 132.  Therein, a "voluntary" mental patient brought a § 1983 action against officials of a state hospital for admitting him to the psychiatric ward, alleging he was incompetent to give informed consent and therefore could not "voluntarily" commit himself.  *Id*. at 114-15.  State statutes failed to require any determination of his competency to consent to the "voluntary" admission, and the hospital staff simply followed the admissions procedure without adducing his fitness to sign the forms.  *Id*. at 133.  The Court held that this kind of deprivation of a constitutional right without due process was not barred by *Parratt* because the hospital—the entity responsible both for depriving the plaintiff of his liberty *and* for holding a pre-deprivation hearing —acted according to set procedures, i.e. not randomly or unauthorized, and as such could have offered a pre-deprivation hearing.  *Id*.

The Ninth Circuit has summarized that *Parratt* and *Hudson* were restricted to cases where "officials acted in random, unpredictable, and unauthorized ways," *Zimmerman v. City of*

*Oakland*, 255 F.3d 734, 738 (9th Cir. 2001), but that post-deprivation remedies do not save an otherwise unconstitutional act "in cases in which the state officer acted pursuant to some established procedure." *Id.*; *see also Piatt*, 773 F.2d at 1036 ("Where the state has procedures, regulations or statutes designed to control the actions of state officials, and those officials charged with carrying out state policy act under the apparent authority of those directives, it makes no sense to say either that their conduct is random or that it is impossible for the state to provide a hearing in advance of the deprivation."). The state may also be liable if the individual responsible for depriving the plaintiff of a protected interest without a pre-deprivation hearing had also been delegated the responsibility of providing that hearing. *See, e.g., Zimmerman*, 255 F.3d at 739 (where officer had been delegated both the authority to seize the plaintiffs' automobiles and the duty to hold pre-deprivation hearing, Parratt and Hudson would not bar the plaintiffs' § 1983 claim).

The crux of Plaintiffs' third claim requires a detailed examination of whether the City's "administrative machinery" would have been aware of Velazquez's conduct prior to the November 30th seizure, and what power Velazquez had to seize signs *sua sponte*. § 17.69.660(B) of the Code states: "The City Manager or the Director of Planning, after conducting an investigation, shall order the abatement and removal of any such sign . . . by giving Notice of Violation . . . to the owner of the real property upon which the sign is located." The Code further requires a 30-day waiting period for the offending party to file an appeal and request a hearing, and only after the expiration of the 30 days (or adjudication in favor of the city in the hearing) does the City have the power to remove any sign. Code §17.69.660(H).

The evidence presented to this Court demonstrates that Velazquez made contact with the Johnsons twice in the week prior to the seizure. SS #3. On November 24th, Velazquez met with the Johnsons to discuss removing the signs, and the Johnsons allegedly agreed to do so. *See* Plaintiffs' Ex. 9, Doc 39-9, p 1. On the 25th, Velazquez met with Chief Pietro, who told Velazquez that the Johnsons owed $4500 for their unpaid water, sewer and trash services. *Id.* at p.2. Chief Pietro told Velazquez that the City was willing to contract for reimbursement of the bill. *Id.* Velazquez then spoke with Mrs. Johnson about the City's offer, and again questioned

Mrs. Johnson about removing the signs. *Id.*, p.3. Mrs. Johnson refused, but did agree to remove the names of various City officials from the signs. Id. Then, on November 30th, Velazquez determined the signs violated the Atwater Municipal Code, and spoke with Officer Vargas that he intended to enforce the Code. *Id.* at p.4. Velazquez told Vargas that his intent was to seize and remove the signs from the Johnsons' residence pursuant to the Code § 17.69.660, and issue the Johnsons a citation for this violation. *Id.* Velazquez and Vargas then went to the Johnsons' residence, and after a twenty-minute argument, Velazquez seized the signs. SS #34.

On December 18th, the City served the Johnsons with a formal Notice to Abate the signs. SS #40. An administrative hearing was held on January 14, 2016, and less than a week later the hearing officer ordered the City to cancel the Notice of Abatement, as the sections of the Code violated Plaintiffs' constitutional rights. SS #40, *see also* SAC ¶ 26. Aside from the November 30th event, the City made no efforts to remove the signs. SS #38, 39. The Johnsons filed a tort claim for the signs with the City, which was settled in the first part of 2016 for $1200. SS #33.

These facts indicate that Velazquez's seizure was both random and unauthorized, and the entity responsible for providing the Johnsons with a pre-deprivation hearing—the City—would not have learned about the seizure until after it had happened, such that a pre-deprivation hearing would have been impractical. *Hudson*, 468 U.S. at 520. The Johnsons' claims are factually distinguishable from *Zinermon*, wherein the entity responsible for affecting the deprivation and providing the hearing was one in the same, for the Code specifically denominates the City Manager or Director of Planning to order the abatement of any signs found errant under this section. 494 U.S. at 133; *Zimmerman*, 255 F.3d at 739. Further, Plaintiffs' have presented no evidence that Chief Pietro ordered the seizure, and have premised their third cause of action primarily on Velazquez's failure to follow the procedures denoted in the Code.[6] Thus, once the City provided the Plaintiffs' with post-deprivation remedies, the Plaintiffs' claim for damages under § 1983 became barred by *Parratt* and *Hudson*, since the fundamental principle of those

---

[6] The Court is cognizant of Plaintiffs' assertions that Chief Pietro, as one with authority to enact policy, met with Velazquez on November 25th and authorized him to seize the signs. *See* Plaintiffs' Response In Opposition, Doc 39-1, p. 11, ¶¶ 10-12. As discussed in greater detail in Section IV below, this assertion is not supported by any facts in the record, and so the Court cannot rely on this "fact" in this summary judgment motion. *See In re Ahaza Systems, Inc*. 482 F.3d 1118, fn.1 (9th Cir. 2007) (counsel's arguments and statements do not create material issues of fact).

cases is that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." 468 U.S. at 533; *compare Merrill v. Cty. of Madera*, 2007 WL 4365579, at *4 (E.D. Cal. Dec. 11, 2007), aff'd, 389 F. App'x 613 (9th Cir. 2010) (officer's denial of plaintiff's lawful right to enter a government building was an "abuse of his position," not pursuant to established procedure, and so due process claim was barred by *Parratt*); *with Santiago v. City of Los Angeles*, 2016 WL 7176694, at *9 (C.D. Cal. Nov. 17, 2016) (where the officer's confiscations were the result of state or authorized policies and procedures, rather than random or negligent actions by law enforcement or officers, the plaintiffs' due process claim was not barred by *Parratt-Hudson*); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989) (where city informed plaintiffs that they were violating the law, which could result in revocation of permits, and city later revoked the permits, deprivation "not random [because] the injury is sufficiently predictable to make a pre-deprivation remedy practicable.").[7]

### Conclusion

Plaintiffs were provided with an adequate remedy, as evidenced by their settlement of $1200 for the signs as well as by the January administrative hearing cancelling the Notice of Abatement. SS #34, 40. There is no evidence Velazquez acted within his authority to seize the signs, nor any evidence that the City was aware of Velazquez's conduct, and therefore Plaintiffs' third cause of action is ultimately controlled by the *Parratt-Hudson* doctrine. *Zimmerman*, 255 F.3d at 737. Thus, Defendants' motion for summary judgment on count three of Plaintiffs' SAC—42 U.S.C. § 1983 - Violation of Due Process Under Fourteenth Amendment Unreasonable/ Unlawful Seizure of Private Property under Fourth Amendment—is appropriate.

---

[7] Some circuits have gone so far as to suggest that it is of no consequence whether an individual state employee is able to predict the deprivation "because the controlling inquiry is solely whether the State is in a position to provide for pre-deprivation process." *See, e.g., National Ass'n of Boards of Pharmacy v. Board of Regents of the University System of Georgia*, 633 F.3d 1297 (11th Cir. 2011); *Manning v. Dakota County School Dist.*, 782 N.W.2d 1 (2010). While this analysis is helpful in distinguishing between entity tasked with providing the hearing and its employees, this Court thinks a holding of that nature goes too far. For instance, in situations where the a government employee may not be a policymaker, the government may still delegate considerable power to this employee allowing him/her affect deprivations and to facilitate hearings, and the *Parratt-Hudson* doctrine should not bar these kinds of § 1983 claims. *See Zimmerman*, 255 F.3d at 739.

### III.    Summary Judgment as to Claim IV: Free-Speech Impingement, Code Officer Velazquez and the City

*Material Facts for this Claim*

The Johnsons installed signs in protest of the City's actions shortly after their water dispute with the City escalated in October 2015.  SS #2.  Velazquez contacted Plaintiffs multiple times in late November about removing the signs, at one point expressing that he was targeting them because of the content of their signs.  SS #14, *see also* R. Johnson Depo. at 187: 1-6; Plaintiffs' Ex. 3, p.3.  Velazquez seized the signs on November 30th, and the Johnsons reinstalled new protest signs shortly thereafter.  SS #38.

On December 18th, the City served the Johnsons with a Notice to Abate regarding the signs.  SS #40.  An administrative hearing was held on January 14, 2016, and less than a week later the hearing officer ordered the City to cancel the Notice of Abatement, as the sections of the Code violated Plaintiffs' constitutional rights, as applied to the Johnsons.  SS #40, *see also* SAC ¶ 26, Exhibit 2 to SAC (January 20, 2016 decision of hearing officer).

*Defendants' Argument*

Defendants argue the undisputed facts show Plaintiffs have failed to show they "have any First Amendment Claim."  Defendants maintain the fact that Plaintiffs reinstalled their protest signs shortly after the first set was seized on November 30th demonstrates their speech was not in-fact chilled.  Defendants also assert Plaintiffs have failed to show that Velazquez's desire to chill their speech was "a but-for cause of their allegedly unlawful conduct," and even if not, Velazquez is entitled to qualified immunity.  Thus, Defendants assert summary judgment is appropriate.

*Plaintiffs' Opposition*

Plaintiffs counter that the inquiry asks only whether a defendant's actions would chill or silence "a person of ordinary firmness from future First Amendment activities," and assert that it is "only because of [their] extraordinary fortitude and desire for justice that they continue to protest the action of Defendants by placing signs in their yard."  Plaintiffs further counter that the undisputed material facts more than demonstrate a but-for cause, pointing to Velazquez's content-specific comments prior to his seizure of the signs.  Finally, Plaintiffs contend clearly established law prohibits this conduct.  Thus, Plaintiffs maintain summary judgment is inappropriate.

*Analysis*

  A.  *Free-Speech Retaliation*

  A plaintiff may bring a § 1983 claim alleging that public officials, acting in their official

capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First

Amendment rights.  *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir.

2016) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  To make out a

claim, a plaintiff has the burden to prove the defendant "deterred or chilled [the plaintiff's]

political speech and such deterrence was a substantial or motivating factor in [the defendant's]

conduct." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999); *see

also Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (referring to the "substantial

motivating factor" as "a but-for cause").  Here, the undisputed facts demonstrate Plaintiffs have

adequately shown that a reasonable jury may determine Velazquez was motivated to chill the

Johnsons' speech, such that summary judgment would be inappropriate.[8]

  First, based on the record before this Court, a jury may easily find that Defendants deterred

or chilled the Johnsons' political speech.  The Johnsons installed signs in protest of the City's

actions over a water dispute.  SS #2.  These signs were seized on November 30th.  SS #38.

Defendants maintain that because the Johnsons were not in-fact chilled by the seizure of their

signs—as evidenced by the fact that they reinstalled more signs after November 30th—Plaintiffs'

claim should fail on this point.  However, the operative test is not subjective, but instead examines

whether "a person of ordinary firmness" would be chilled.  *See Mendocino*, 192 F.3d at 1300

("Because it would be unjust to allow a defendant to escape liability for a First Amendment

violation merely because an unusually determined plaintiff persists in his protected activity, we

conclude that the proper inquiry asks whether an official's acts would chill or silence a person of

ordinary firmness from future First Amendment activities.").

---

[8] The parties do not dispute that the Johnsons were engaged in political speech via their signs, which is the third
element of a free-speech retaliation claim. *See, e.g., Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006)
(searching someone's office and seizing still camera used to record police actions demonstrates, *inter alia*, the plaintiff
was engaged in a protected activity).

Second, the facts indicate a genuine dispute exists as to whether the City's substantial motivation was to interfere with the Johnsons' First Amendment rights, or whether it was purely intending to enforce the Municipal Code. Intent to inhibit speech, which is an element of the claim, can be demonstrated either through direct or circumstantial evidence. *Mendocino* 192 F.3d at 1300-01; *Magana v. Commonwealth of N. Mariana Islands,* 107 F.3d 1436, 1448 (9th Cir. 1997) (circumstantial evidence of intent is sufficient to survive summary judgment motion). A defendant's substantial motivation may be established via: (1) proximity in time between plaintiff's expressive conduct and the allegedly retaliatory actions; (2) defendant's express opposition to his/her speech, either to him or to others; or (3) falsity or pretext of defendant's proffered explanations for adverse action. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

Here, the Johnsons installed their signs shortly after their dispute with the City escalated in October 2015, and Velazquez began contacting them about removing the signs shortly after. SS #1. The Johnsons maintain that Velazquez expressed multiple times in the week prior to the seizure that he was targeting them because of the content of their signs. SS #14, *see also* R. Johnson Depo. at 187: 1-6. In one instance, Velazquez specifically mentioned the content of the signs, asking the Johnsons to remove the names of the City officials spray-painted onto the signs. *See* Plaintiffs' Ex. 3, p.3 (November 25th report of Velazquez's encounter with the Johnsons). Finally, though Plaintiffs' do not directly challenge the constitutionality of the Code in this lawsuit, the evidence suggests that provisions of the Code relied upon by Velazquez are contrary to First Amendment jurisprudence. *See* SS #40, *see also* Exhibit 2 to SAC (January 20, 2016 decision of hearing officer finding that portions of the Code unconstitutional as applied to the Johnsons' signs). *Mendocino,* 192 F.3d at 1303. Therefore, whether denominated a "substantial and motivating cause" or "a but-for cause," a genuine issue of material fact exists on the question of causation. *Compare id.* ("The possibility that other inferences could be drawn that would provide an alternate explanation for the [county's] actions does not entitle them to summary judgment."); *with Occhionero v. City of Fresno*, 2008 WL 2690431, at *13 (E.D. Cal. July 3, 2008) ("The key is whether Code Enforcement and the Fire Department acted adversely against [the plaintiff] due to his [] comments. There is *no* evidence—direct or circumstantial—to that

effect. The evidence reveals that Code Enforcement and Fire Department actions were motivated by fire protection and safety concerns, especially given [plaintiff's] failure to comply with citations and inspection requests.") (emphasis added).

Thus, Plaintiffs have raised issues of material fact concerning whether Velazquez's seizure of the signs violates the Johnsons' First Amendment rights. "Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *Arizona Students*, 824 F.3d at 869; *compare, e.g., Livingston v. Luken*, 151 F. App'x 470, 477–78 (6th Cir. 2005) (allegations regarding the seizure of the plaintiff's vehicle for his vocal criticism of the defendant city's public officials sufficient to state a claim for retaliation ); *Zinn v. Vill. of Sauk Vill.*, 2017 WL 783001, at *5 (N.D. Ill. Mar. 1, 2017) (retaliation plausible where defendant city continued to impound plaintiff's vehicle because of the plaintiff's complaints concerning the defendant engaging in unconstitutional practices); *with Barshinger v. Buffington*, 131 F. App'x 783, 784 (3d Cir. 2005) (First Amendment claims "patently without merit" where the record establishes that defendant acted within his municipal authority to issue the citations for violations of the fire code, and the record is devoid of evidence of improper motive); *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 223 (N.D.N.Y. 2012) (no causal link between plaintiff's First Amendment activity and the defendant's decision to enforce building permit provisions, where enforcement officers were unaware of plaintiff's speech).

*B. Qualified Immunity for Free-Speech Retaliation*

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White*, 137 S. Ct. at 551. Whether a right is clearly established for the purposes of qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Ford*, 706 F.3d at 1195. "To satisfy this step in the qualified immunity analysis, we generally must 'identify a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the Fourth Amendment." *Shafer*, 868 F.3d at 1117 (quoting *White*, 137 S. Ct. at 552), *see also id.* at 1118, fn. 3 (recognizing an exception to the 'case-on-point' rule in situations where the constitutional misconduct is "sufficiently obvious,"

such that the question is beyond debate). The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional. *Ford*, 706 F.3d at 1195.

In *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1376 (9th Cir. 1990), the Ninth Circuit discussed the unlawfulness of a government official retaliating because an individual engages in free-speech protected activities. Therein, an officer initiated a traffic stop of the driver because the plaintiff, an intoxicated passenger, made obscene gestures toward the officer. *Id*. at 1378. The court reminded that the First Amendment protected obscene gestures and profanities lodged against state officials, a proposition well-established, and so the officer was not eligible for qualified immunity in plaintiffs § 1983 suit. *Id*.

Later, the Court extended this holding to situations where evidence of unlawful retaliation existed even if the officer had probable cause to believe an individual had committed a crime. *See Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1233 (9th Cir. 2006). The Court concluded that since absence of probable cause was not an element of a § 1983 retaliation claim, a situation could exist where the evidence demonstrates that an officer could both lawfully affect a seizure of a person's property *and* unlawfully retaliate in a § 1983 suit. *Id*. at 1235. There, however, the court granted the officer qualified immunity, for this was the first time the Ninth Circuit had found a First Amendment violation despite an officer's probable cause determination. *Id*.

In *Ford*, however, the Ninth Circuit reminded that once a right has been clearly established, a defendant in a § 1983 suit is not entitled to qualified immunity. 706 F.3d at 1196. There, the Ninth Circuit found the plaintiff had submitted sufficient evidence that the defendant officer had retaliated against the plaintiff in violation of the First Amendment, even though the officer had probable cause to believe the plaintiff had committed a misdemeanor—"closely analogous" to the Court's holdings in *Duran* and *Skoog*. *Id*. The Court noted that a reasonable officer would have known this, not only because of prior circuit precedent but also because state law prohibited seizure of an individual in derogation of the constitutional rights of an arrestee. *Id*.

Finally, in *Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013), the Court approved qualified immunity for officers who seized the plaintiff for violating a city ordinance,

because it was "objectively reasonable" for the officers to rely on that ordinance in arresting him. The plaintiff spoke at a city council meeting in protest of a particular policy. *Id*. at 808. After the plaintiff became belligerent, the council cut his mic, and the chief of police ordered his officers to remove the plaintiff for violating a provision of the city code that prohibited "disorderly, insolent, or disruptive behavior" during city council meetings. *Id*. at 809-811. The Ninth Circuit found the ordinance to be unconstitutional, but also immunized the officers from the § 1983 suit because "objectively reasonable" officers could not have known of the code's unconstitutional nature. *Id*.

Here, the same logic of *Ford* and *Acosta* applies to Plaintiffs' case, leaving qualified immunity out of reach for Code Officer Velazquez. Reading the facts in a light most favorable to Plaintiffs, it is clear that these cases provide Velazquez with clearly established precedent counseling against seizure in retaliation for the Johnsons' exercising their First Amendment rights. This is true despite the fact that Velazquez may not have in-fact known about his unconstitutional application of the Code to the Johnsons' signs, for the standard is whether a "reasonable officer" would have known about the unconstitutional nature of these actions. Here, a reasonable officer would have known a seizure could not be affected without a formal Notice of Abatement, which included the Johnsons' right to appeal at a formal hearing, for the Code specifically spells out these procedures in the same section Officer Velazquez purportedly relied upon to seize the signs. These procedures in the Code do not exist to create burdensome administrative duties on City officials, but to protect the City's citizens against the erroneous impingement of their civil rights—as borne out by the facts in this case. *See* Exhibit 2 to SAC (January 20, 2016 decision of hearing officer declaring the Notice of Abatement unconstitutional as applied to the Johnsons).

Thus, under the clearly-established precedent of *Acosta*, 718 F.3d 800, as guided by *Ford*, 706 F.3d at 1196, *Skoog*, 469 F.3d 1221, and *Duran*, 904 F.2d 1372, Velazquez is not afforded qualified immunity for Plaintiffs' fourth cause of action.

### Conclusion

Plaintiffs have raised genuine issues of material fact on their free-speech claim. Further, under the clearly established precedent, Defendants are not eligible for qualified immunity for this claim. Thus, summary judgment for Defendants would be inappropriate at this time.

#### IV.     Summary Judgment as to Claim VII: *Monell* Liability, the City and Chief Pietro

*Facts Material to this Claim*

In the fall of 2015, the Johnsons placed a number of wooden signs in the front yard of their residence, in protest of the City's actions over the water dispute.  SS #2.  On both November 24th and 25th, Code Officer Velazquez contacted the Johnsons to discuss removal of the signs, as he believed the signs violated the Code.  SS #2.  On November 30th, Velazquez seized the signs, over the Johnsons' protests.  SS #11, 34.

*Defendants' Argument*

Defendants' main argument with regard to Plaintiffs' *Monell* claim is that "Plaintiffs cannot establish the critical element at the heart of *Monell* liability: the existence of a policy or custom, adopted or ratified by a municipal policymaker, [or usage or practice], that amounted to a violation of a specific constitutional or federal right."

*Plaintiffs' Opposition*

In the SAC, Plaintiffs allege that the City and City Manager and Chief of Police Frank Pietro failed to "adequately train, supervise and discipline [Velazquez, Snyder and Vargas] in the enforcement of the [] Code, appropriate use of force, and appropriate arrest powers."  SAC ¶ 95.

Plaintiffs argue that Frank Pietro, as both Chief of Police and City Manager, is the "final policymaking authority" for the City and "made a deliberate choice to follow a course of action among various alternatives."  Plaintiffs then assert, without a citation to any factual predicate in the record before the Court, that members of the City government were aware of Mr. Johnson's mental illness and proclivity for violence.  *See* Plaintiffs Response In Opposition (Doc 39-1) ("Plaintiffs Response"), p. 2, ¶ 3.  Plaintiffs also assert that the Chief "spoke to Velazquez on November 25, 2015 [but] did not direct Velazquez to get a warrant [or] to issue a notice of abatement . . . ."  *See* id., p. 12, ¶¶ 4-6.  Plaintiffs therefore argue that these assertions demonstrate how Pietro "deliberately set[] a policy to allow his employees [to violate the Johnsons' rights]."  *Id.* at ¶¶ 10-12.[9]

---

[9] Defendants have objected to these and other evidentiary assertions in a separate response (Doc. 40), asserting that "counsel's arguments and statements not evidence and do not create material issues capable of defeating otherwise valid motion."  *See In re Ahaza Systems, Inc.* 482 F.3d 1118, fn.1 (9th Cir. 2007).  Rather than address these objections in a separate order, the Court considers Defendants' arguments contemporaneously with this Order.

In *Monell v. Dep't of Soc. Servs. of City of New York*, the U.S. Supreme Court held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies," but that liability cannot lie "on a *respondeat superior* theory." 436 U.S. 658, 690-691 (1978); *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). Rather, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002). "A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).

Here, Plaintiffs have alleged one instance connecting a policy of the City with the events of November 30th. In their motion opposing summary judgment, Plaintiffs assert that Chief Pietro "spoke to Velazquez on November 25, 2015 [but] did not direct Velazquez to get a warrant [or] to issue a notice of abatement . . . ." See Plaintiffs Response, p. 12 ¶¶ 4-6. However, this assertion has no basis in the record, and cannot be taken as fact for summary judgment purposes. *See In re Ahaza Systems, Inc*. 482 F.3d 1118, fn.1 (9th Cir. 2007) (counsel's arguments and statements are not evidence and do not create material issues capable of defeating otherwise valid motion). Plaintiffs point to no other policy or custom, established by official decree, edict, act or ratification of Pietro concerning any of Velazquez (or anyone else's) acts.

Since Defendants have pointed out an absence of a genuine dispute of material fact on this issue, and Plaintiffs have in turn "failed to establish that a genuine issue [] exists," summary judgment for Chief Pietro and the City for *Monell* liability is warranted. *See Nissan Fire*, 210 F.3d at 1103 ("The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial.").

**CONCLUSION**

Regarding Plaintiffs' second cause of action, a claim of excessive force against Officers Vargas and Snyder, though genuine issues of material fact exist as to whether the Officers used excessive force in their arrest of Mr. Johnson, this was not "clearly established" at the time of the encounter, considering the facts at hand. Plaintiffs' third cause of action, for denial of due process, is barred by the *Parratt-Hudson* doctrine. Plaintiffs have failed to establish a genuine issue of material fact on their seventh cause of action, for *Monell* liability against the City and Chief Pietro. Summary judgment is therefore appropriate on these three claims.

However, Plaintiffs have raised genuine issues of material fact on their fourth cause of action, impingement of their right to free-speech, and under the clearly established precedent, Defendants are not eligible for qualified immunity for this claim. Thus, summary judgment for Defendants on this claim would be inappropriate at this time.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.   Defendants' motion for summary judgment (Doc. 37) is GRANTED as to Plaintiffs' second, third and seventh causes of action, and GRANTED as to the Defendant City in Plaintiffs' fourth cause of action;

2.   Defendants' motion for summary judgment is otherwise DENIED; and

3.   Plaintiffs' motion for Extension of Time (Doc. 44) to file their opposition to Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:   January 23, 2018

_____
SENIOR DISTRICT JUDGE