UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD DEAN JOHNSON and LORI JOHNSON,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ATWATER, *et al.,*<br><br>Defendants. | Case No. 1:16-cv-1636-AWI-SAB<br><br>**FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR ATTORNEYS FEES AND COSTS** |

**I.     INTRODUCTION**

Plaintiffs Richard and Lori Johnson ("Plaintiffs") move to enforce a settlement agreement with Defendants City of Atwater, Frank Pietro, David Walker, Robert Vargas, Dayton Snyder, and Fabian Velasquez ("Defendants") negotiated before Magistrate Judge Barbara A. McAuliffe and subsequently placed on the record in open court on March 27, 2018.[1] (Doc. 66). On July 13, 2018, Defendants filed an opposition to the motion. (Doc. 69). Finding the matter suitable for disposition without oral argument, the Court took the matter under submission on July 24, 2018. (Doc. 70). For the reasons discussed below, the Court **RECOMMENDS** that Plaintiffs' Motion be DENIED.

---

[1] The remaining defendants are David Walker and Fabian Velazquez.

1

## II.     BACKGROUND

This action arises out of a longstanding dispute between the Johnsons and the City of Atwater over the non-payment of the Johnsons' water bill.  Plaintiffs filed this action in the Superior Court for the County of Merced on September 20, 2016, alleging various constitutional and state law violations.  On October 28, 2016, this action was removed by Defendants to the Eastern District of California.  Defendants' moved dismiss on March 17, 2017, and Plaintiffs' filed a second amended complaint on May 15, 2017.  (Doc. 27).  Defendants moved for partial summary judgment on November 29, 2017 and District Judge Anthony W. Ishii ruled on the motion January 24, 2018.  (Doc. 45).  Counsel for the parties attended a pretrial conference with Judge Ishii on February 8, 2018. At the pretrial conference, Plaintiffs' requested leave to supplement their complaint based on events occurring in September and October of 2017, approximately a year after Plaintiffs filed their initial complaint. Judge Ishii suggested Plaintiffs apply for a continuance.  (Doc. 50).  On February 15, 2018, the parties stipulated to a short continuance of the trial date "so that the parties may attempt to take advantage of a settlement conference" with the Court.  (Doc. 50).

On March 27, 2018, the parties participated in a settlement conference before Magistrate Judge Barbara A. McAuliffe.  After conducting a morning session, the parties reached an agreement and the settlement agreement was placed on the record in open court.  Before the terms of the settlement were read on the record, the Court admonished the parties and counsel about the importance of putting a settlement on the record. The Court placed the following relevant settlement terms on the record as follows:

1.     Defendants to pay to Plaintiffs a sum total of $75,000. (Doc. 66-1 at 4:10)

2.     The $75,000 represents settlement of all claims involved in Case No. 1:16-cv-01636 against Defendants Walker and Velazquez. (Doc. 66-1 at 4:13-14.)

3.     The $75,000 also represents settlement of all claims arising from the October 9, 2017, incident. (Doc. 66-1 at 4:15.)

4.     The $75,000 also represents settlement of all claims arising from an incident in September 2017 regarding payment of a water bill. (Doc. 66-1 at 5:4-21.)

2

1    5.   The Court specifically retains jurisdiction over the terms of the settlement. (Doc. 66-1 at 11:9- 9.)

6.   The parties agree that a standard settlement agreement will be executed, with a release of all claims, including the standard release of all claims, knowing and unknown, arising from the incidents of October 9, 2017, and the incidents arising in this case, Case No. 16-1636.

At the conclusion of the morning session, the Court found that "the parties have entered in a knowing, intelligent, and voluntary settlement of the claims in this case as well as the other incidences that the Court has explained here on the record and, therefore,…the settlement has been entered into." The parties were excused.

After the morning session, Defendants contacted the Courtroom Deputy by phone requesting that the Court allow the parties to appear again on the record in the afternoon to clear up misunderstandings that came to light during the lunch hour. (Doc. 60-1 at 14). At approximately 2:55 p.m. the parties returned to the courtroom, stated their appearances on the record, and counsel for Defendants explained that he recently became aware that Plaintiffs were considering pursuing additional and potentially related claims against the City of Atwater and its employees. Counsel for Defendants argued that these additional claims would be inappropriate based upon his understanding that the settlement "wiped the slate clean;" resolving all of Plaintiffs' currently existing claims and/or causes of action against the named Defendants remaining in this case as well as against the City of Atwater and all of its employees. (Doc. 66-1 at 13). Having learned that Plaintiffs intend to bring previously undisclosed claims, Defendants argued that the settlement agreement did not reflect a true meeting of the minds regarding the settlement terms.

Counsel for Plaintiffs, Kerry Margason, responded that she was unaware that there might be potential other claims while she was negotiating the morning settlement, however she never intended "to do some global wipe the slate clean." (Doc. 66-1 at 14). Counsel for Plaintiffs stated:

MS. MARGASON:   After speaking, after this issue was brought up and speaking with my clients, Your Honor, there appear to be some potential to—I

3

|   |   |   |
|---|---|---|
| 1 |  | have to tell you. I have not vetted any claims. It's the first time I've |
| 2 |  | heard about them, so I don't have details and I don't have specific |
| 3 |  | facts. But there may be some potential claims regarding defamation |
| 4 |  | and some illegal entry and arrests against the City and the police |
| 5 |  | force. |
| 6 | THE COURT: | Arrests unrelated to the ones that we talked about? |
| 7 | MS. MARGASON: | Unrelated to what we talked about and what we've been talking |
| 8 |  | about for the last—yes, completely unrelated. |

After hearing arguments, the Court took a recess to give Plaintiffs' counsel an opportunity to speak to her clients about the nature of their proposed claims. The hearing resumed and Plaintiffs' counsel stated "we, do not want to make a global settlement. My clients are not in agreement on that. So we, we would want to not to be held to the settlement agreement if it includes those other items." (Doc. 66-1 at 20). The Court advised Defendants that they would have until April 16, 2018, to decide whether to agree that there was no meeting of the minds with respect to the settlement agreement or file a motion to enforce the settlement agreement as read on the record. (Doc. 66-1 at 20).

On April 4, 2018, Defendants filed a "Notice of No Meeting of the Minds." (Doc. 57). On July 8, 2018, Plaintiffs filed *Johnson v. City of Atwater* alleging constitutional and state law claims related to the "longstanding and ongoing dispute" with the City of Atwater over Plaintiffs' "water service." *See Johnson v. City of Atwater*, United States District Court, Eastern District of California, Case No. 1:18-cv-00920-DAD-SAB, Doc. No. 1 ("*Johnson II*"). Plaintiffs' complaint in *Johnson II* states that following the filing of the underlying case, "additional events have taken place that are 'closely related' to the underlying action. Plaintiffs' Compl. *Johnson II*, No. 18-cv-920, Doc. 1.

On May 14, 2018, Plaintiffs filed the instant motion to enforce the settlement agreement. (Doc. 66). The parties now dispute whether the settlement's release of claims was intended to include all claims which could be asserted and/or had been asserted by Plaintiffs at the time of settlement.

4

## III. LEGAL STANDARD

"[I]t is [] well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978) (citations omitted). "[A] motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (internal citations omitted).

"Under California law, the intent of the parties determines the meaning of the contract." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (citing Cal. Civ. Code §§ 1636, 1638). The proper inquiry is the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *Id.* Therefore, if a party does not express his or her true intent as to the meaning of a material term of a settlement agreement, that subjective intent is irrelevant. *Id.* Moreover, when parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement. *Blix Street Records, Inc. v. Cassidy*, 191 Cal.App.4th 39, 48 (2010).

California has a strong policy in favor of enforcing settlement agreements. *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007). A settlement agreement "must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." *Roden v. Bergen Brunswig Corp.*, 107 Cal.App.4th 620, 625 (2003); *see* Cal. Civ. Code § 1636. "[C]ourts will not set aside contracts for mere subjective misinterpretation." *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal.App.4th 1410, 1421 (1996)." A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal.App.4th 1618, 1622 (2006).

An essential element of any contract is "consent" to — or a "meeting of the minds" on — the agreement's material terms. *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 810-14, 71 Cal. Rptr. 2d 265 (1998). To be enforced, a settlement must also meet two specific

requirements: (1) it must be a complete agreement; and (2) the settling parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977); *Hamilton v. Willms*, No. CV F 02-6583 AWI SMS, 2007 U.S. Dist. LEXIS 21336, 2007 WL 707518, at *9 (E.D. Cal. Mar. 6, 2007). "Under California law," moreover, "the intent of the parties determines the meaning of the contract." *United Commercial*, 962 F.2d at 856 (citing Cal. Civ. Code §§ 1636, 1638). "The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct — rather than the subjective beliefs of the parties." *Id.* Therefore, if a party does not express its true intent as to the meaning of a material term of a settlement agreement, that subjective intent is "irrelevant." *See id.*

## IV. ANALYSIS

In the instant case, the Court finds that there was no meeting of the minds as to the material terms of the settlement agreement. As preserved on the record, it is obvious that the parties failed to reach an agreement on the essential terms of the contract. While Plaintiffs' objective intent during the negotiations was to wipe the slate clean and "be done" with defendants, and defendants too wished to wipe the slate clean, each party was negotiating to settle different claims. Plaintiffs intended to settle only some of the claims they alleged against Defendants, while preserving other undisclosed, but related claims. This is evidenced by Plaintiffs' counsels statement that at the time of settlement, she was unsure of the details regarding the new claims sought by Plaintiffs. "Some of the [new] issues, I can't even give you dates. I, I'm not even sure. I don't know if timely claims have been made to the City. I, I don't know. I have had no opportunity to review or vet the issues." (Doc. 66-1 at 19).

Defendants, on the other hand, intended to settle all existing claims in addition to the claims asserted in the underlying complaint. Counsel for Defendants stated that "we were under the, I believe, the same understanding as the Court, that that was everything that was out there and that's why we raised the number in our discussion to settle any and all outstanding claims." (Doc. 66-1 at 17).

Similarly, the Court was unaware of any other outstanding claims not incorporated in the

intended settlement agreement or encompassed by the negotiations. The Court stated on the record, "I didn't understand it to be from October to the present because I wasn't made aware of anything and I certainly made it clear that you would be waiving any and all claims related to these incidences and anything that arose out of it." (Doc. 66-1 at 19).

The Court is therefore not convinced that the parties entered into an enforceable agreement because there was not a meeting of the minds on Plaintiffs desire to retain the right to bring additional related claims against Defendants. Plaintiffs have failed to meet their burden in this respect, and the Court cannot enforce an agreement to which both parties did not mutually assent. "The whole concept of a settlement is that it is a voluntary agreement between the parties to resolve a lawsuit on mutually acceptable terms. That concept is defeated when the court imposes terms on one of the parties which that party did not intend to accept. Here, it appears that the parties never had a meeting of the minds. If they cannot agree on what their purported settlement covered then they do not have a settlement agreement." *See Wallis v. Centennial Ins. Co.*, 2010 U.S. Dist. LEXIS 63200 (E.D. Cal. June 24, 2010). Without a clear meeting of the minds on an essential term, the settlement agreement is not an enforceable contract.[2]

**V.  CONCLUSION and RECOMMENDATIONS**

For the reasons stated above, IT IS HEREBY RECOMMENDED that

1. Plaintiffs' motion to enforce the settlement agreement should be **DENIED;**

2. Plaintiffs' Motion for Attorneys' Fees and Costs in the amount of $2,000 for enforcing the settlement should be **DENIED.**

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and

---

[2] The Court also considers that it would be manifestly unfair to enforce an agreement which left some related claims pending against defendants where defendants were negotiating from a position of settling any and all claims.

recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 16, 2018**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE